### Homer Stetson v. Merton O. Davidson et al

[126 A2d 921]

October Term, 1956.

Present: **Jeffords, C. J., Cleary, Adams, Hulburd and Holden, JJ.**

Opinion Filed November 7, 1956.

*Witters, Longmoore & Akley* for defendant Davidson.

*Abare & Sargent* for defendant Barcomb.

*Daniels & Reed* for the plaintiff.

**Adams, J.** This is an action of tort for the conversion of a motor truck. Trial was by court. Findings of fact were made and filed. Judgment thereon was for the plaintiff. The case is here on exceptions of the defendants to certain findings, to the failure to find as requested and to the judgment.

The material findings to which there are no exceptions show the following facts;—On June 6, 1951, the defendant, Barcomb, d/b/a Barcomb Motor Sales, sold to the plaintiff a 1948 Reo Truck with body and cab, the motor number of which was 109A-45064. The cost was $1300., to which was added the cost of registration and prepaid interest, making a total of $1872.45. The plaintiff gave Barcomb a conditional vendor's lien note for $1872.45 which was signed by the plaintiff and one Richard Mullins. The note was payable $25. each week until fully paid. Barcomb assigned the note to the Hardwick Trust Company and it paid him the face of the note discounted.

All of the payments that were made on the note were made by the plaintiff between the period from June 6, 1951 and January 22, 1952. However, the plaintiff was in arrears on several occasions, at which times the bank sent delinquent notices to Barcomb, also to the plaintiff and Mullins, the co-signer. On several occasions Barcomb and the treasurer of the bank, Gerald Ladd, talked concerning the delinquent payments.

Late in November or early December 1951, the plaintiff had installed, at a cost of $285.41, a new motor in the truck to replace the old motor. The new motor bore the number 110A-58588X and it was installed at the Barcomb Motor Sales Co. The replacement of the motor was with the knowledge of Ladd, the treasurer of the bank. On December 8, 1951, the plaintiff gave the bank a chattel mortgage on the truck, therein described with the new motor number. This chattel mortgage was upon "consideration" that the plaintiff and his heirs, executors or administrators pay or cause to be paid to the bank, its successors or assigns, the sum of $1872.45 specified in a promissory note dated June 6, 1951, signed by Homer Stetson, Richard Mullins, originally given to Barcomb Motor Sales and endorsed by it to the Hardwick Trust Co., the owner and holder thereof in due course, payable $25. each week, the balance due being $1222.45. The mortgage further provided that the property was to be kept in good condition, insured against loss by fire and theft for the benefit of the mortgagee, not sold without the written consent of the mortgagee and in event of foreclosure or collection of the mortgage indebtedness by legal proceedings the mortgagor was to pay the cost of foreclosure or collection including attorney's fees. It further provided for the payment of any and all other notes, demands and obligations that the bank might at any time have against the mortgagor and covered renewals of any note or notes.

Mullins, the co-signer of the note with the plaintiff, was not a part owner of the truck. He did not exercise ownership or have it in his possession or join in the chattel mortgage to the bank.

On or about January 21, 1952, the plaintiff wrote a letter to Ladd of the bank advising that the plaintiff had not been able to keep up his payments on the note and he would have to

let Barcomb have the truck back. On or about January 22, 1952, the defendant, Davidson, accompanied by one Perley Gifford, an employee of the defendant, Barcomb, went to the residence of the plaintiff, while he was away. Davidson informed the minor son of the plaintiff that they were there for the truck. Gifford hitched the truck to the Barcomb wrecker, Davidson staying in the wrecker, and the truck was taken to the Barcomb garage. At the time of this taking by Davidson, the plaintiff was in arrears $125. in payments. For three weeks prior to January 22, the truck had remained idle in the yard on the premises of the plaintiff.

On April 14, 1952, the truck was repossessed by the bank and it was sold at sheriff's sale by Howard M. Dodge, deputy sheriff, on April 28, 1952, for $225. "At the time said mortgage sale was held by the bank, there was due on the said mortgage the sum of $1147.00."

The defendants excepted to that part of finding 9 reading as follows:—"That the plaintiff made a new transaction with said Ladd, who was acting in behalf of the bank, whereby the indebtedness was refinanced on December 8, 1951." The remainder of the finding has to do with the execution on December 8 by the plaintiff of the chattel mortgage to the bank. The finding sets forth in full the condition of the mortgage. The ground of the exception is that the quoted part of the finding is contrary to all the evidence and is not supported by the evidence.

Where a finding is challenged upon the ground that it is without evidentiary support, it must stand if there is any legitimate evidence fairly and reasonably tending to support it. *Strout* v. *Wooster*, 118 Vt 66, 74, 99 A2d 689. On review we do not weigh the evidence since its persuasive effect and the credibility of the witnesses are for the trier of the facts to determine. A finding must stand if supported by any substantial evidence, although there may be inconsistencies or substantial evidence to the contrary. *Petition of Citizens Utilities Co.*, 117 Vt. 285, 287, 91 A2d 687. The plaintiff in his brief in support of that part of the finding under discussion cites testimony that the bank took the chattel mortgage in substitution of the one that was in the note and that the mortgage was given as

some other type of lien. This evidence does not support the finding that a "new transaction" was made "whereby the indebtedness was refinanced." It is plain from the terms of the mortgage that the bank continued to hold the old note. It is described in the mortgage by its original date, amount, signers, payee, rate of payment and balance then due upon it.

The defendants also excepted to all of findings 10, 11, 15, part of finding 16 and to all of 17. The ground of the exception in each instance is that it is contrary to and not supported by the evidence. It is sufficient to say, without going into detail, that there was evidence fairly and reasonably tending to support these findings.

Finding 22 reads as follows,—"That the value of the truck, body and cab on January 22, 1952 was $800.00." The ground of the exception is that the finding is contrary to all the evidence and that it is substantiated by no evidence. Our attention is called to the following testimony;—The agreed price of the truck on June 6, 1951 was $1300. The plaintiff testified that he had improved it and that when it was taken it was probably worth $2500. The defendant Barcomb, testified that when it was taken it was worth not more than $300. A witness for the defendants testified, without objection, that he saw the truck in Barcomb's yard just before it was sold at sheriff's sale, that he did not want it and it was worth nothing to him. With the testimony standing thus, there was no evidence fairly and reasonably tending to support the finding.

Finding 18 reads as follows:—"That such taking of the truck by the defendant, Davidson, and the employee of the defendant, Barcomb, was done without legal right." The ground of the exception is that the finding is a legal conclusion unsupported by the evidence or other proper findings. It is plain that it is a conclusion of law. Therefore, it cannot stand if it is inconsistent with the findings upon which it is based. *Enosburg* v. *Hartford Ins. Co.*, 117 Vt 114, 117, 85 A2d 577. This conclusion is the main issue in the case.

The plaintiff says in his brief that on this issue we are faced with an extension of the point involved in *Newell Bros.* v.

414

*Hanson*, 97 Vt 297, 123 A 208. There this Court held that a bank, holding a conditional sale note by endorsement in blank which note reserved title in the seller to the property described therein, in default of payments, had the right to foreclose the lien as assignee of the note, even if it acquired only an equitable title by the assignment. He refers us to an annotation in 65 ALR 783. The annotation points out that there is some difference between a situation where the reservation of title is contained in a separate conditional sales contract and where it is contained in the note itself. The annotation at page 786 says that in cases where reservation of title is effected by a clause in the note itself, "it is generally held that a transfer of the note carries with it title to the property." See also 47 Am Jur Sales, §929, p. 138; 78 CJS Sales, §641, p. 459. That was the type of note involved in *Newell Bros.* v. *Hanson, supra.*

■ The plaintiff then says in his brief that the type of note involved in the instant case is one where title is reserved to the seller in the note itself. The findings are insufficient in that respect. They do not set forth the note or its endorsement to the bank. They speak of it only as a conditional vendor's lien note. Furthermore, the defendant, Barcomb, testified that the truck was not his in the first place and that he sold it for a customer and that a mistake was made in not taking a note payable directly to the bank signed by the plaintiff and Mullins. If Barcomb did not own the truck when he sold it to the plaintiff, it would logically follow that he could not reserve a title in it to himself until it was paid for, nor could he transfer any reserved title to the bank. The findings are silent upon this phase of the critical issue. We cannot supply missing facts by an examination of the transcript. *State* v. *Malmquist*, 114 Vt 96, 107-108, 40 A2d 534.

The foregoing situation in regard to title might well be one of the reasons why the bank later took a chattel mortgage on the truck. It might also pertain to the findings which show that Barcomb was a director of the bank and did not have to pay the note and was released from all liability on it and that the note was returned to Mullins, the bank having received full payment for the same.

There is authority to the effect that the seller's act in subsequent taking a chattel morgage on the same property from the maker of a conditional sale note which reserves title in the seller, waives the contract and thereby vests title in the buyer. 78 CJS Sales, §592, p. 336; 47 Am Jur, Sales, §974, p. 186. It has also been held that this rule applies to an assignee of the seller. Anno. 95 ALR 351. The findings are insufficient for us to decide whether it had that effect in this case.

■■ The judgment here was for $800. and the defendants have an exception thereto. The only basis for the judgment is finding 22, which established the value of the truck at the same time of the taking at $800. Generally, the measure of damages in an action of conversion is the value of the property at the time of the conversion. *Crampton* v. *Valido Marble Co.*, 60 Vt. 291, 303, 15 A 153, 1 LRA 120. This Court has held, however, that, when a conditional vendor of property takes it and does not proceed in accordance with the statute, the measure of damages in a suit against him by the conditional vendee is the value of the property at the time of the taking diminished by the sum then remaining due upon the contract of sale. *Clark* v. *Clement*, 75 Vt 417, 420, 56 A 94.

Therefore, the measure of damages in the instant case is affected by the title, if any, that Barcomb had to the truck when he sold it to the plaintiff or after he transferred the note to the bank or after it took the chattel mortgage and also by the release by the bank of Barcomb from liability on the note. Enough has appeared in the record to justify a belief that upon another trial, with more detailed and adequate findings of fact, the case may be presented in such a manner that the rights of the parties may be understandingly adjudicated upon the merits. *Longchamp* v. *Conti*, 115 Vt 492, 494, 66 A2d 1.

■ It becomes unnecessary to dispose of the exceptions of the defendants to failure to find certain requests. We think, however, we should add something about the briefing by the defendants of two purported exceptions to the admission of evidence. Their separate bills of exceptions do not mention any exceptions to the evidence and they do not make the trans-

cript controlling, so even if the transcript shows that such exceptions were taken, they are not before us.

*Judgment reversed and cause remanded.*