# SINGER SEWING MACH. CO. v. INDUSTRIAL COMMISSION et al.

No. 6354.   Decided September 27, 1943.   (141 P. 2d 694.)

For former opinion, see 104 Utah 175, 134 P. 2d 479.

*Fabian, Clendenin, Moffat & Mabey,* of Salt Lake City, for plaintiff.

*F. F. Dremann* and *A. M. Ferro,* both of Salt Lake City, for defendants.

LARSON, Justice.

Plaintiff filed petition for rehearing, claiming that the opinion erred in two particulars: First, in the statement that there was no question raised as to Winget being excluded from benefits by provisions (a), (b) and (c) of Sec. 19 (j) (5) of the Act; Second, that we did not discuss plaintiff's liability to pay taxes under the Act on all its agents in Utah operating under contract 72, or other contracts substantially similar, except for varying amounts of commissions. The court deems it advisable to note briefly these points. As to the first point, we quote now from page 31 of the plaintiff's original brief:

"In conclusion we submit that these salesmen are not rendering services 'for wages or under any contract of hire' under our Unemployment Act, as analyzed in the Fuller Brush Case. *It never became necessary to pass upon the question of whether they are excluded by* Sec. 19 (j) (5) (a) (b) and (c)." (Italics added.)

In the brief on petition for rehearing, discussing this matter, plaintiff says:

"Moreover, plaintiff definitely feels that *if a hearing were held by the commission at which each* of the company's *agents,* concerning whom the Commission is threatening to impose tax liability on the plaintiff, *were to testify* fully as to his actual operations under the contract, *that it would be found that the majority or all of these* agents would satisfy the A, B, and C tests." (Italics added.)

For us to have passed upon the case of each of these agents before the commission did so, or made any order

concerning them would be putting the cart before the horse, or the saddle on backwards. Inasmuch as it appears that plaintiff will be required to meet that problem before the Commission on a question on which there was evidently some dispute when this case was heard by the department, we note the problem involved in both questions, somewhat for the guidance of the parties and the department.

We again summarize the holdings of all our prior decisions thus: The Unemployment Compensation Act includes within its operations many relationships not included in the common-law relationship of master and servant; under the scope of the Act, relationships are either "service relationships" or "non-service relationships"; all "service relationships" constitute "employment" as that term is defined in the act; a "service relationship" exists where one renders services for another for "wages or under a contract of hire"; when it has been determined that a "service relationship" exists, that is, that one performed personal service for another for wages or under a contract of hire, the provisions of Sec. 19 (j) (5) are invoked to determine whether or not the service relationship found to exist is one which is included within or one which is excluded from the operations of the Act. If such service relationship is one which meets, conjointly, the provisions of (a) (b) and (c) of Sec. 19 (j) (5) the employment is filtered or culled out from the operations of the act, and benefits cannot be received, nor does tax liability exist. If, however, the service relationship is one that does not meet conjointly the provisions of (a) (b) and (c) of 19 (j) (5) it remains as employment within the act and the employer is liable for the tax or contribution thereon.

We held in the opinion rendered that contract 72 created a service relationship between the salesmen and the company. We likewise held in effect that Winget, the salesman there involved, was not filtered out of employment within the act by the provisions of Section 19 (j) (5).

As to whether every salesman who operates under contract 72, or a substantially similar contract, is one on whom the company must pay the tax we cannot say. We do say it creates a service relationship which puts ■ one in employment under the act, and therefore subjects the employing unit to a tax thereon, unless it is taken out by a conjunction of the provisions of (a) (b) and (c) of Section 19(j) (5). As stated by plaintiff in its brief quoted above, that may depend upon the facts of each particular case.

Rehearing denied.

McDONOUGH, J., concurs.

WOLFE, Chief Justice (concurring).

I think it well to treat in one category all the provisions of the Act which are to be used to determine whether a relationship is to be retained in or ejected from the Act under the provisions of 19(j) (1) and under the concurrent conditions of the (a) (b) and (c) clauses of 19(j) (5) and in another category all those provisions which are designed for the determination of whether the applicant, after his relationship is found to be subject to the Act, has met the conditions necessary to participate in the fund.

That Sec. 19(j) (5) is still a part of the machinery for determining whether any particular relationship is included or excluded from the Act seems clear from its very words. It provides that:

"Services performed by an individual for wages *shall* be *deemed* to be *employment* subject to this act unless and until it is shown to the satisfaction of the commission that"

the conditions contained in clauses (a) (b) and (c) concur. If they do not concur the service relationship is subject to the Act because it is so declared unless it appears that the condition of each (a) (b) and (c) concur. It follows that if the relationship is subject to the Act the employer must

contribute his percentage of the wages even if eventually the applicant has not had sufficient length of service to participate in the fund or has not met some other condition required to give him benefits. Contrariwise, if the relationship is freed from the Act the employer is not under obligation to contribute because of that relationship. I have, in the past, in my various concurring and dissenting opinions, hitherto expressed these ideas. Hence, I am wholeheartedly in accord with the ideas expressed in the foregoing opinion.

MOFFAT, Justice (dissenting).

I reluctantly concurred in the original opinion in this case, Utah, 134 P. 2d 479, upon the sole ground that one clause of the contract seemed to call for some sort of limited control as to a single "service" the agent could perform or refuse to perform in his option.

I cannot concur in the opinion of the court denying the petition for a rehearing. I especially dissent from the following language:

"We again summarize the holdings of *all* our prior decisions thus: The Employment Compensation Act [Employment Security Act—both titles are used] includes within its operations many relationships not included in the common law relationship of master and servant; under the scope of the act, relationships are either 'service relationships' or 'non-service relationships'; all 'service relationships' *constitute employment*' as that term is defined in the act; a 'service relationship' exists where one renders services for another for 'wages or under a contract of hire'; when it has been determined that a 'service relationship' exists, that is, that one performed personal service for another for wages or under a contract of hire, the provisions of Sec. 19 (j) (5) are invoked to determine whether or not the service relationship found to exist is one which is included within or one which is excluded from the operations of the Act." (Italics mine.)

Under the Unemployment Security Act (Sec. 42-2a-1) "wages" is no longer wages as we once understood wages. "Contributions" mean money payments required by the act for a state unemployment fund. (Sec. 42-2a-19(g).

Those "contributions" are deductible to the same extent as taxes are deductible upon taxable income. (Sec. 42-2a-7 (e). "Contributions" unpaid on the date on which they are due bear interest at one-half of one per cent a month. (Sec. 42-2a-14 (a) (1). Penalties are provided if "contributions" are not paid (Sec. 42-2a-14 (a) (2). "Contributions" may be collected by a civil suit (Sec. 42-2a-14 (c) or as an alternative remedy a warrant may be issued by the "Commission" directed to the sheriff of any county of the State directing him to levy and sell the real and personal property of the delinquent employer (Sec. 42-2a-14 (e) and they ("contributions") are a lien upon the property of the employer and follow the goods in case of sale (Sec. 42-2a-14 (f) and "wages" includes commissions and bonuses and "gratuities" customarily received by an individual in the course of his employment from persons other than his employing unit (Sec. 42-2a-19 (p) with certain items designated that are not "wages". (Sec. 42-2a-19 (p) (1) (2) (3) and (4).

Change comes fast and furiously. One must either try to keep the pace or fall by the wayside. Words get each other by the tail and run around in circles so fast as to make the head swim. If semantics is the word, this act has set a pace in definition and semantics that "worries the cat that killed the rat that ate the malt that lay in the house that Jack built."

It may be, no doubt it is, my fault; but I am compelled to confess I cannot see either harmony or clarity in the opinion of the court. With what I cannot understand, I cannot agree.

PRATT, J., on leave of absence.