320 P.2d 315

Milton E. JOHNSON, Plaintiff,

v.

BOARD OF REVIEW OF the INDUSTRIAL
COMMISSION of the State of Utah, DE-
PARTMENT OF EMPLOYMENT SECU-
RITY, et al., Defendants.

No. 8553.

Supreme Court of Utah.

Jan. 15, 1958.

Mark Hammond, Price, for appellant.

Fred F. Dremann, Salt Lake City, E. R. Callister, Atty. Gen., for respondent.

CROCKETT, Justice.

Milton E. Johnson seeks review and reversal of the decision of the Board of Review of the Industrial Commission denying him unemployment compensation. [1]

Mr. Johnson had worked regularly for the United States Fuel Company in its mine at Hiawatha, Utah, for approximately ten years prior to being laid off due to a reduction in force on March 30, 1956. He was thus involuntarily unemployed and ordinarily would have been eligible for unemployment compensation benefits. His application was rejected on the ground that he was not "unemployed" within the meaning of the Employment Security Act [2] by reason of his operation of a farm as he had done during his employment.

The fundamental proposition contended for by the Commission is that one who is *self-employed is not "unemployed"* as contemplated by the Act. It relies on a number of cases decided under statutes similar to ours which hold that where a person divides his time between working for another and an enterprise of his own, a lay-off does not make him eligible for unemployment benefits. [3] This is so because he can rely upon his own efforts and the income therefrom for support, which supplants the succor intended under the Act. Illustrative is the recently decided

1. Regular procedure was followed: petitioner's claim was first rejected by a department representative; then by Appeal Referee; and finally by Board of Review.
2. 35-4, U.C.A.1953.
3. Muchant v. Unemployment Compensation Bd. of Rev., 175 Pa.Super. 85, 103 A.2d 438; Shadowens Unemployment Comp. case, 177 Pa.Super. 49, 110 A.2d 258; Kapera v. Unemployment Comp. Rev. Bd., 173 Pa.Super. 508, 116 A.2d 238, 239; Martin v. Unemployment Comp. Bd. of Rev., 174 Pa.Super. 412, 101 A. 2d 421.

case of Hatch v. Employment Security Agency,[4] in which the Idaho court held that a carpenter who built a home during a period of lay-off and acquired a $7,500 equity of its total value of $16,500 was not unemployed and entitled to benefits under the Idaho Act. Another example is the case of Phillips v. Michigan Unemployment Compensation Commission,[5] wherein the court held that an attorney who had worked in a manufacturing plant from 1944 until 1947 and was laid off, and who returned to his law practice but registered for work and filed a claim, was not unemployed within the meaning of the Act, saying:

"We believe that the words 'unemployed individual' are used in § 28 in their ordinarily accepted sense and that, taken in that light, one who is engaged in rendering service for remuneration or who devotes his time to the practice of a profession by which a living is customarily earned cannot be said to be unemployed."

The cases are based upon the rationale that the purpose of the Employment Security Act, as stated by the declaration of policy,[6] is to lighten the burdens of unemployment upon the worker and his family and to maintain purchasing power in the economy. The design is to nip in the bud the descending economic spiral which may result from unemployment and consequent loss of purchasing power which tends to ramify in chain reaction form throughout the economy. It is reasoned, however, that the act was not intended to go beyond that purpose, and that unless it is carefully administered, the fund will be kept depleted so that it will not be able to fill in the breach and stabilize the economy in emergencies as intended.

It is suggested that if one can follow two occupations, and upon termination of one, receive compensation while working and receiving income from the other, he may so manage his jobs and terminations as to be employed, receiving income from one, and compensation for being unemployed, from the other, a large part of the time. Another difficulty is that benefits under the Act might be used to subsidize self-employment enterprises which are actually in competition with the business which must bear the burden of providing the unemployment compensation. It is obvious that if a worker has two alternatives: self-employment, under which he can receive benefits accrued from prior employment; or going to work for an employer, which course would deprive him of such benefits, he will choose the former.

We are in accord with the authorities relied upon by the Commission which

4. Idaho, 313 P.2d 1067.
5. 1948, 323 Mich. 188, 35 N.W.2d 237, 239.

6. 35-4-2, U.C.A.1953.

hold that, under usual circumstances, one who is engaged in self-employment as an occupation is not "unemployed" within the meaning of the Act, and it is undoubtedly true that the Act was not intended to discriminate against other businesses by subsidizing self-employment enterprises.

Conceding the above principles, there yet exists a critical problem in the instant case as to what extent an employed person might make some industrious use of his spare time for the benefit of himself and family before he is rendered ineligible for benefits should he lose his regular job.

Although the term "self-employed" is nowhere defined in the Act, Sec. 35–4–22 (m) (1), U.C.A.1953 defines the word "unemployed" as follows:

> "an individual shall be deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him, or in any week of less than full-time work if the wages payable to him * * * are less than his weekly benefit amount."

Section 35–4–22(p) defines wages as:

> "All remuneration for personal services, including * * * the reasonable cash value of any remuneration in any medium other than cash. * * *"

█ Thus, applying the above statutes to one who is engaged in part time farming, it would seem that the farmer should be considered "unemployed" and eligible for benefits when the income from his farm operation is less than the weekly unemployment benefit amount he would receive under the Act. This does not mean that he would be entitled to the entire weekly benefit amount, but rather under Sec. 35–4–3(c), his weekly income from his own efforts, less $6.99 per week, would be deducted from the weekly benefit amount, This conclusion is in conformity with the policy of the Act, as discussed above. Since it was designed to provide minimum sustenance to the unemployed individual, one receiving less than his "weekly benefit amount" should be considered eligible, whether employed by another or self-employed.

The only part of the Act which specifically refers to self-employment is Sec. 35–4–5(c) U.C.A.1953 which provides:

> "An individual shall be ineligible for benefits * * * if the commission finds that, being unemployed and otherwise eligible for benefits, he has failed without good cause, * * * to return to his customary self-employment (if any) when so directed by the commission."

The plain purpose of this section was to prevent a person with a potential source of income from sitting back, idly twiddling his thumbs, and collecting unemployment

compensation. Since the Act fails to define self-employment, the Commission, under power granted it to prescribe regulations in reference to partial and total unemployment,[7] has adopted a rule that one who engages in any calling, business or profession which is potentially profitable so that it may add substantially to his income, is self-employed and therefore not "unemployed." Such regulation seems reasonable and necessary. However, in light of the policy considerations previously discussed and the definition of the term "unemployed" as contained in the Act, it should not be so applied to entirely bar recovery to an individual who, upon being involuntarily unemployed from his regular job, attempts to engage in an independent calling but fails to earn as much income as his weekly benefit amount otherwise would be. Of course in either case, the individual claiming benefits must hold himself available for any employment that would pay greater income, just as Mr. Johnson did in the instant case. Under such circumstances the income from self-employment should be taken into account, just the same as though the applicant were employed by another, and if his income does not reach his weekly benefit amount, he should be allowed the difference. As previously mentioned, other business is not to be discriminated against in favor of self-employment by allowing compensation in the latter and denying it in the former; by the same token, where only partial income is available from either source, we can see no reason why benefits should be allowed to one partially employed by another but denied if he works for himself. That would subsidize working for others and penalize self-employment, and if self-employment were followed, would not fulfill the purposes of the Act.

It is also recognized that a fair administration of the act requires the department, in determining the income from self-employment, to allocate the potential income over the period it was earned even though not actually received then.[8] Farming is a good example. That most of the farm produce may be harvested and sold in the fall, would not mean that the farmer should be considered as having no income in the other seasons. In this and other occupations, if such allocation were not allowed, the self-employed person could defer the actual receipt of income, or deliberately manipulate it, so as not to receive it during the benefit period.

■ The prerogatives of the Commission are necessarily to be exercised in accordance with the social purposes of the act. For the same reasons that we have held the Workmen's Compensation Act, U.C.A.1953, 35-1-1 et seq. is to be liberal-

---

7.  35-4-22(m) (2), U.C.A.1953.

8.  See Hatch v. Employment Security Agency, note 4 supra.

ly construed to effectuate its purposes, the Employment Security Act should also be liberally construed and administered.[9] The proceedings conducted under the aegis of the Industrial Commission are not adversary in nature as are court trials, but are intended to be impartial investigations of the facts. It is therefore not strictly proper to speak in terms of burden of proof as ordinarily understood, yet there are certain basic procedural concepts necessary to be kept in mind as a guide in making the determination in each case.

When it appears from the investigation that the applicant has been in covered employment for the requisite period, and that he has become involuntarily unemployed, he is prima facie entitled to benefits, which should be allowed him unless the investigation discloses something which would render him ineligible by reason of other employment, or refusal to accept available employment. Doubts should be resolved in favor of coverage of the employee. With this in mind, we proceed to examine the applicant's contention in his petition for review that "The findings * * * are not supported by the evidence," aware however that such findings should not be disturbed by us if they find any reasonable support in the evidence.[10]

Mr. Johnson's benefit amount, if totally unemployed, would have been $33 per week.

The appeals referee found that the estimated gross value of his farm products was $1,793 which, allocated over the year, gives in round figures $34 per week; just $1 per week over the benefit amount. The farm may seem large by some standards because it contained 254 acres. That fact is illusory inasmuch as only 40 acres, made up all of small scattered tracts of 3 to 5 acres each, was tillable, the remainder being waste land. Apparently for the purpose of demonstrating that the applicant's income on a yearly basis exceeded the $33 of his weekly benefit amount, the referee made findings of the farm products (most of which were consumed on the farm) and assigned values to them as follows:

| | |
|---|---|
| 5 acres of alfalfa, with a yield of 2 tons to the acre, valued at $20.00 per ton. | $200.00 |
| 4 acres of wheat, with a yield of 20 bushels, valued at $1.90 per bushel. | 152.00 |
| 5 acres of corn silage, valued at $40.00 per acre. | 200.00 |
| Sale of cream. | 156.00 |
| 6 calves, at average value $40.00. | 240.00 |
| 8 pigs from the spring litter, valued at $8.00. | 64.00 |
| Total | $1012.00 |

It seems incontestable that plaintiff is right in his contention that the $240 item relating to calves, should not be considered as income. The testimony plainly shows that this figure represented what the calves were worth, not their increase in value. They obviously were not the natural in-

---

9. See Jones v. California Packing Corp., 121 Utah 612, 244 P.2d 640 and authorities referred to therein.

10. Ibid.

crease of one year from Johnson's two cows, but were acquired and kept for the purpose of building up his livestock. In determining income it is certainly not proper to include the value of business assets. Deducting the $240 from the $1,012 income figure, leaves only $772 of definitely ascertained income.

In addition to those listed items upon which an agreed price or value was set, the record also shows that the farm produced 15 acres of barley and oats, milk and eggs for own consumption, and 6 pigs from the fall litter. The record is devoid of any indication of the value of these items. In fairness to the applicant, neither the department nor this court can arbitrarily conclude that their value exceeded his weekly benefit. Were we to speculate upon such income, which we will not do, it would require assigning over $1,000 to these additional items to bring the total income for the year high enough to exceed plaintiff's weekly benefit entitlement.

Another very important consideration is the fact that the finding is as to gross income. It is common knowledge that there are operation costs in farming, the same as any other type of business. Johnson testified that seed and fertilizer alone for the coming year would run around $400. He operated a tractor and other farm machinery which involved expenses in operation, upkeep and repairs, and depreciation. These costs of operation should be taken into account in making the determination as to Johnson's income from self-employment.

There is another particular about which the record is so uncertain that no satisfactory finding can be made. Mr. Johnson did not operate the farm by himself. Rather, it was a family project. His 15-year old son and his wife did much of the farm work, even to the extent of running the tractor. The entire farm income should therefore not be attributed to him personally, but there ought to be some fair and reasonable allocation of the income produced by his efforts and that produced by his wife and son.

In view of the uncertainty which exists as to Mr. Johnson's income from self-employment, this cause is remanded for the purpose of making a more definite determination of the income properly assignable to him, and upon the basis thereof to make such order consistent with the views herein expressed, as may seem appropriate.

No costs awarded.

WADE, J., concurs.

WORTHEN, Justice (concurring).

I concur in the opinion of Mr. Justice CROCKETT—adding the following: The act in question is remedial and should be liberally construed to avoid economic insecurity due to unemployment. Plaintiff testified that he went to work in the mines

because he couldn't make a living farming. What petitioner did on the farm after his services were discontinued at the mine was just what he had done while working at the mine. The dissenting opinion of Mr. Justice Henriod states,

> "* * * and that for many years prior to his mine work and during the entire time he was employed in the mine, both in working periods and lay-off periods he was actively and continuously engaged in farming."

The decision of the Board of Review used this language,

> "There is no evidence that the claimant in the instant case has abandoned, or intends to abandon, his self-employment as a farmer. To the contrary, he testified that he intended as time went on to increase his dairy herd in order to make his operation more profitable. His self-employment continued during the period of time when he was working for wages for another employer."

It is apparent that plaintiff was at all times herein mentioned self-employed. But the act does not specifically cover such a case. It is not provided that if a claimant performs simultaneously work for another for wages and work for himself he should upon suspension of the work for wages be disqualified to receive benefits because of his self-employment.

In my opinion a rational interpretation of the meaning of the statute does not con-template that where one has accepted covered employment and at the same time is continuing to fully perform the necessary service connected with his self-employment (farming) that it is possible for him to *return* to his customary self-employment. Plaintiff did operate his farm while working at the mines. I believe that the legislature meant what the language used contemplated. If he had discontinued his self-employment to enter the mines the department might, if it seemed fair and reasonable, direct him to return to his self-employment. If he had leased his former self-employment (farm) it would probably be unfair to give such a directive. However, the act would seem to envision a situation similar to the one mentioned and the legislature provided for his being relieved from following the directive if he has good cause to offer why he cannot or should not *return* to his customary self-employment.

HENRIOD, Justice (dissenting).

I dissent, suggesting that the main opinion has misfired completely. It volunteers and raises an issue favorable to plaintiff and unfavorable to defendants, which was not suggested by anyone in this case. Gratuitously and without benefit of anyone's request to do so, the majority opinion attacks the findings of the Commission as to amount of income and winds up by sending the case back for another try. In my opinion the reversal of a case on a point not pressed

by any litigant is not consonant with the duty to preserve taxpayers' money where possible.

The only issue here is whether the plaintiff was self-employed, and in my opinion there is no question but that he was, the breakdown of farm income by the main opinion to the contrary notwithstanding. In concluding as it does, the main opinion cannot escape the fallacious and arbitrary assumption that a person is not self-employed if he happens to make less in his usual and customary business than he would receive during the lay-off period. Such assumption does complete violence to the accepted meaning of clear, understandable language, and fails to recognize competent authority.[1]

Although it should not be necessary to anwer an issue that was never raised by anyone except by this court for the first time on appeal and without any request to examine the findings as to farm income, or without claim made that they were in error, in fairness to the defendants, who must be taken aback with the turn of events on this appeal, the analysis of the findings by this court in what appears to be a most labored effort, requires this writer to comment upon it. The main opinion forgot to tell us that in addition to the items which it lists, the record clearly reflects that the plaintiff also had under cultivation 7 acres

of barley, 10 acres of oats and 8 or 9 acres of nurse crop planted with the grain, to which not a farthing's value is assigned by this court, although common knowledge would dictate that the fact finder may have assigned a considerable value to these rather extensive crops in arriving at his figure. Although not an item of any considerable magnitude, the main opinion again forgot to tell us what a year's milk supply from two cows was worth in making its calculations in attacking the Commission's findings. The majority opinion, by a sort of silence, minimizes the nature and extent of the self-employment involved in this case. It neglected to tell us that the 52 year old applicant has been a farmer, not a miner, *all his life,* that about 10 years ago he found himself unable to make a complete living as a farmer without a supplementary income. It fails to point out that the applicant admitted that "We are trying to make that farm our life, our livelihood," and that for many years prior to his mine work and during the entire time he was employed at the mine, both in working periods and lay-off periods he was actively and continuously engaged in farming. The main opinion also ignores the fact that he had owned a farm all his life.

After a rather microscopic review of the evidence concerning value, and without conceding that the Commission's findings were

1. Aley v. Unemployment Comp. Bd., 178 Pa.Super. 515, 116 A.2d 241; Kapera v. Unemployment Comp. Rev. Bd., 178 Pa.Super. 508, 116 A.2d 239.

arbitrary or capricious, a condition precedent to their annulment by us, the opinion then asserts that there was such uncertainty as to the exact amount of farm income as to require sending the case back to upset the findings of the Department Representative, the findings of the Appeal Referee and to reverse the Commission's findings. It is submitted that any uncertainty was resolved on substantial evidence by the agency whose findings this court dozens of times has insisted would not be disturbed under similar circumstances. This court many times has said that with respect to factual matters, the Industrial Commission's determination will not be disturbed unless clearly arbitrary, the function of the Supreme Court being solely to review questions of law and to determine if the Commission lawfully has pursued its authority. It would take a volume to review our pronouncements on this score. For this court now to assess and weigh the facts and assign its own values to property in direct opposition to those found by the Commission, in a case like this, is to arrogate unto it a power confessedly not possessed and is such a radical departure from our previous expressions as to make us appear ridiculously inconsistent.

In concluding as it has, the main opinion not only reverses its previous pronoucements as to power of review, but has laid down a yardstick impossible of application because of variables, unpredictables and incalculables that cannot lend themselves to any degree of exactitude. Furthermore, it has blinded itself to reality and actuality. It requires little imagination to know that this plaintiff would continue to get his farm income long after the 6½ month benefit period had expired, whereas the miner without any farm or other outside income would get nothing. This plaintiff would be dipping into a fund which was created by the industry of himself and fellow miners, while his industry as a farmer, in which he put in about the same amount of time as he did in mining, as is reflected in the record, contributed nothing to that fund. Why should a man in the position of the plaintiff, who obviously has the outside means of at least feeding himself and his family, be given an advantage over him who has no farm to rely upon in periods of adversity? Why should the mining fund support the independent income of this farmer while his fellow worker has none to support? It is no answer to say that the Act should be construed liberally, as the main opinion says it should be, in aid of the more favored worker and to the detriment of the less favored worker. If it is to be construed liberally, the man with the farm should not benefit more than the less fortunate one without a farm,—and it hardly can be gainsaid in this case that the applicant here is far better off, particularly when the unemployment continues than is the worker without an independent source of economic relief.

The main opinion also is vulnerable to the criticism that it does not follow the authorities, some of which are strikingly similar.[2]

McDONOUGH, C. J., concurs in the result reached in the dissenting opinion of Mr. Justice HENRIOD.

---

2. Muchant v. Unemployment Comp. Bd., 175 Pa.Super. 85, 103 A.2d 438; Hatch v. Employment Sec. Agcy., Idaho, 313 P.2d 1067; Phillips v. Michigan Unemp. Comp. Comm., 323 Mich. 188, 35 N.W. 2d 237.