GREAT LAKES STEEL CORPORATION *v.*
EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS.
   Continuance of employer-employee relationship, for many purposes while employees are on strike, does not, per se, bar employees from receiving unemployment benefits following layoff from interim employment during strike (CLS 1961, §§ 421.29, 421.42).

2. SAME—STATUTES—INTERPRETATION.
   Definition of employment in employment security act as "service * * * performed for remuneration," *held,* to require finding

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 6–8] 48 Am Jur, Social Security, Unemployment Insurance and Retirement Funds § 36.
   Construction and application of provisions of unemployment com pensation or social security acts regarding disqualification for benefits because of labor disputes or strikes. 28 ALR2d 287.
[2] 48 Am Jur, Social Security, Unemployment Insurance and Re tirement Funds § 15.
[4] 50 Am Jur, Statutes § 219.
[5] 48 Am Jur, Social Security, Unemployment Insurance and Re tirement Funds §§ 7, 8.

that striking employees, working at interim employment during strike, were, while so working, in "employment" of interim employer and not the employer struck (CLS 1961, § 421.42).

3. SAME—DISQUALIFICATION FOR BENEFITS.

Disqualification of an individual from unemployment benefits where total or partial unemployment was due to labor dispute "in the establishment in which he is or was last employed," *held,* inapplicable to striking employees laid off from interim employment obtained during strike, since interim employer was establishment in which last employed (CLS 1961, § 421.29).

4. STATUTES—INTERPRETATION—COURTS—LEGISLATURE.

The courts may not insert words in statutes unless necessary to give intelligible meaning or to prevent absurdity, as statutes are to be construed without regard to the court's own estimate of the wisdom of the legislation.

5. SAME—CONSTRUCTION—UNEMPLOYMENT COMPENSATION.

Unemployment compensation legislation should be liberally construed to afford coverage and strictly construed to effect disqualification, since its purpose is to pay benefits and ameliorate the consequences of widespread unemployment (CL 1948 and CLS 1961, § 421.1 *et seq.,* as amended).

6. UNEMPLOYMENT COMPENSATION — STATUTES — INTERPRETATION — STATES.

Claim that finding striking employees were last employed by interim employer during strike and, therefore, not disqualified from unemployment benefits, would be improper surrender of State's neutrality in labor dispute by assisting one side at the expense of the other, *held,* without merit, since purpose of unemployment legislation is to alleviate distress of unemployment without regard to merits of labor dispute (CLS 1961, § 421.29).

7. SAME—LAYOFF BY INTERIM EMPLOYER.

Claim that striking employees laid off from interim employment during strike were not "unemployed," as defined in employment security act, since loss of remuneration from "employing unit" was due to no failure of struck employer to provide regular, full-time employment, *held,* without merit, since "employing unit" referred to is interim employer who did cause loss of remuneration by failing to provide full-time, regular employment (CLS 1961, § 421.48).

8. Same—Disqualification for Benefits.
    Striking employees who obtained bona fide interim employment during strike *held*, to be "unemployed" upon layoff by interim employer (CLS 1961, §§ 421.29, 421.48).

Appeal from Ingham, Hughes (Sam Street), J. Submitted Division 2 January 4, 1966, at Lansing. (Docket No. 482.) Decided May 23, 1967. Rehearing denied July 24, 1967. Leave to appeal granted October 17, 1967. See 379 Mich 784.

Claim by Thomas Moceri and 73 others for unemployment benefits after being laid off from interim employment obtained while on strike against Great Lakes Steel Corporation. Claims denied. Claimants appealed to referee who granted benefits chargeable against interim employers and denied benefits chargeable against Great Lakes. Appeal to appeal board by Michigan Employment Security Commission, joined in some cases by Ford Motor Company and Chrysler Corporation. Claims granted by appeal board against both interim employers and Great Lakes. Great Lakes appealed to circuit court. Circuit court reversed appeal board, reinstating determination of commission. Claimant Moceri and others appealed. Reversed, reinstating ruling of appeal board.

*Beaumont, Smith & Harris (Frank E. Cooper,* of counsel), for plaintiff, Great Lakes Steel Corporation.

*Kasoff, Young, Gottesman & Kovinsky (Allen J. Kovinsky,* of counsel), for defendant Moceri and other claimants.

*Amici Curiae:*

Employers Unemployment Compensation Council, by *Colin L. Smith.*

International Union, UAW, by *Stephen I. Schloss-*
*berg, John A. Fillion, Bernard F. Ashe,* and *Jordan*
*Rossen.*

T. G. KAVANAGH, P. J.   This matter places
squarely for determination the question:

Is the labor dispute disqualification for unem-
ployment compensation benefits removed by obtain-
ing interim[1] employment?

It comes to us under these facts: A labor dispute
interrupted operations at Great Lakes Steel Cor-
poration from July 15, 1959, to November 7, 1959,
during which time employees of Great Lakes were
on strike. Seventy-five employees of Great Lakes
obtained interim employment with the employer
defendants, and when they were laid off from such
employment they filed claims for benefits. At the
conclusion of the strike they all returned to work
at Great Lakes.

The commission ruled they were disqualified for
benefits under section 29(1)(b) of the act.[2] The
referee ruled they were disqualified for benefits
chargeable to Great Lakes but were qualified for
benefits chargeable to their interim employers.
The appeal board ruled they were not disqualified
at all. The circuit court for Ingham county re-
versed the appeal board and ruled they were dis-
qualified for all benefits, thereby reinstating the
administrative redetermination of the commission.

The pertinent part of section 29 then read:

"(1) An individual shall be disqualified for ben-
efits:

---

[1] The term "interim" as used in this opinion is descriptive only and
applies to the defendant employers or the work performed for them
in this case. It together with "stopgap," "temporary," "bona fide,"
as descriptive of employment has no statutory definition or signifi-
cance in this case.

[2] CLS 1961, § 421.29 (Stat Ann 1960 Rev § 17.531).

"(b) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed."

Each claimant maintains that the interim employer in each instance was the "establishment in which he is or was last employed", and hence the labor dispute at Great Lakes has no bearing on the claim for benefits.

The employers maintain that an individual on strike is nonetheless an employee of Great Lakes, and hence the "establishment in which he is  *  *  * employed" is Great Lakes and the claimant is disqualified.

At the outset it should be stated that we acknowledge that the employer-employee relationship between Great Lakes and the claimants certainly continues for many purposes.[3] This, however, is not controlling. We know of no case where an individual was denied benefits merely because of the continuing relationship of employer-employee when he was laid off for lack of work.

This continuity of relationship as a bar was urged by the employers who cited as authority for their position many cases, principally *Scott* v. *Unemployment Compensation Commission* (1962), 141 Mont 230 (376 P2d 733).

The Montana court stated the issue there involved (p 245): "Since the strike did not terminate the relation of employer-employee, we go to the second question, does the taking of other employment often referred to as stopgap employment, *dissolve the relation?*" (Emphasis added.)

---

[3] Those urged upon us as illustrative by the employers include seniority and fringe benefits. The employers also point out that the claimants continue to be "employees" of Great Lakes under the labor management relations act of 1947, 29 USC § 141 *et seq.*

In the case before us the continuity of relationship is not the issue. We are concerned with whether Great Lakes or the interim employer is the establishment where the claimant "is or was last employed."

The statutory definition of employment is contained in section 42 of the act. The definition there as it applies to our question is simply "service * * * performed for remuneration." Thus an individual who is not performing service for remuneration is not employed and we conclude that the claimants, during the period in question (though in the relationship of "employer-employee" with Great Lakes for some purposes), were not "employed" by Great Lakes within the meaning of this act so as to make Great Lakes the establishment where the claimant *is* employed.

The cases cited by the employers include several which are worthy of note, though none impresses us as authority for the conclusion that the interim employers here are *not* the establishments where these claimants were last employed.

*Alin* v. *Alaska Employment Security Commission* (1958), 17 Alaska 607, explains its rationale (as cited in *Scott, supra,* at p 257):

"Where the act itself, as here, does not define the meaning of the term 'last employed' it would seem that the commission could properly construe it to mean in effect 'last *regularly* employed.' To do otherwise would open the door to unlimited abuse. It would permit a striker to obtain any sort of temporary work and when it was terminated to apply for benefits for the loss of the temporary job even though the work stoppage still continued."

We eschew the insertion of words in statutes unless necessary to give intelligible meaning or to prevent absurdity, without regard to our own

estimate of the wisdom of the legislation. See *Lawrence Baking Co.* v. *Unemployment Compensation Commission* (1944), 308 Mich 198, and *McKibbin* v. *Corporation & Securities Commission* (1963), 369 Mich 69.

In *Westinghouse Electric Corp.* v. *Board of Review* (1957), 25 NJ 221 (135 A2d 489), the New Jersey court says:

"It is urged that a literal application of the definitions in NJSA 43:21–19 would lead to claimant's interpretation of NJSA 43:21–5(d). But such an interpretation would disregard the legislative purposes underlying the disqualification clause."

We cannot accept this as authority, however, for in Michigan we follow the rule of statutory construction that requires a "liberal" construction to afford coverage and a "strict" construction to effect disqualification.[4] See *Linski* v. *Employment Security Commission* (1959), 358 Mich 239, and the dissenting opinion of Mr. Justice McAllister in the case of *Chrysler Corp.* v. *Smith* (1941), 297 Mich 438 at 475:

"The purpose of the legislation is to pay unemployment compensation benefits and to ameliorate the consequences of widespread unemployment. Such compensation is payable to unemployed workers with certain exceptions. To bring claimants within such exceptions, it is necessary to strain at the meaning of the language of the statute and to read into the act exceptions with regard to 'integrated industry,' which are not mentioned anywhere in the legislation. To say the least, this would result in a narrow rather than a liberal construction of the meaning of the statute. It is most salutary, and in this case, in our opinion, conclu-

---

[4] See CL 1948 and CLS 1961, § 421.1 *et seq.*, as amended.

sive, to bear in mind that the purpose of the legislation is to pay unemployment benefits, and not to refuse them; and a liberal construction results in the allowance of the claims rather than their denial."

(This dissenting opinion was cited with approval in the case of *Park* v. *Employment Security Commission* [1959], 355 Mich 103 which overruled *Chrysler Corp.* v. *Smith, supra.*)

Nor are we diverted from our conclusion that the claimants here were last employed by their interim employers and not disqualified by section 29(1)(b) by the argument that the payment to strikers results from the State's improperly surrendering its neutrality in a labor dispute by providing benefits to individuals involved in a labor dispute. This argument was advanced and rejected by a majority of the court in *Lawrence Baking Co., supra,* wherein Mr. Justice STARR stated (pp 214, 215):

"Plaintiff's argument is based upon the premise that the payment of compensation to employees on strike is a penalty upon the employer, because its rate of contribution to the unemployment fund will thereby be increased. The public purpose of the unemployment compensation law is to alleviate the distress of unemployment, and the payment of benefits is not conditioned upon the merits of the labor dispute causing unemployment. * * * By the unemployment compensation act, the legislature provided a method of determining the employer's contribution to the compensation fund, and it did not see fit to base the amount of such contribution upon the merits of a labor dispute or upon the right or wrongdoing of the employer in connection with such dispute. * * *

"We conclude that in the present case the payment of unemployment benefits to claimant em-

ployees would not result in a penalty against plaintiff and would not constitute an intervention by the State on behalf of the employees in the pending labor dispute."

In *Lawrence Baking Co., supra,* strikers were held not disqualified under section 29(1)(b).

This then leaves us only with the conclusion of the circuit court that the claimants here were not "unemployed" under the definition of that term in section 48 of the act, which reads:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate: Provided, That any loss of remuneration incurred by an individual during any week resulting from any cause other than the failure of his employing unit to furnish full-time, regular employment shall be included as remuneration earned for purposes of this section and of subsection (c) of section 27 of this act."

The trial court stated in its opinion:

"It is agreed that all claimants remained employees of the plaintiff-appellant (Great Lakes) during the strike. It seems to the court that the act itself blocks the claimants in their theory that the interim employers were the last employers of said claimants. Great Lakes Steel was their 'employer' during the time they sought compensation and benefits. Section 48 of the act, CLS 1961, § 421.48 (Stat Ann 1962 Rev § 17.552) in its proviso, contains the following language:—[quoted as above].

"Thus the claimants were not unemployed under the act."

This novel construction of section 48 is unacceptable to us. We regard it as an error which stems from a misconstruction of the term "employing unit" as that term is used in the proviso to section 48. The underlying assumption of the trial court was that, since an employer-employee relationship existed between claimants and Great Lakes throughout the period in question, Great Lakes was the "employing unit." With this we disagree.

We have previously held that although an employer-employee relationship did so exist between Great Lakes and the claimants for certain purposes, the interim employer became the "establishment in which he is or was last employed," when employment with such employer had been obtained. In our view, the interim employer then also became the "employing unit" within the meaning of section 48. To hold otherwise would render purposeless the disqualifying provisions of section 29(1)(b), specifically relating to striking workers, since they would already be precluded from receiving benefits under the provisions of section 48. We find, therefore, that each interim employer, and not Great Lakes, is the "employing unit" referred to in the proviso to section 48.

Since claimants seek benefits as the result of layoffs from their interim employers, we regard them as "unemployed" within the definition of section 48, and since they are not disqualified by virtue of the provisions of section 29(1)(b), or otherwise, from this record, we hold them to be eligible for benefits.

The judgment of the circuit court is reversed and the ruling of the appeal board is reinstated. The appellants may tax costs.

BURNS and McGREGOR, JJ., concurred.