453 P.2d 894

**Benny CRUZ, Plaintiff,**

**v.**

**DEPARTMENT OF EMPLOYMENT SECU-RITY of the State of Utah, Defendant.**

No. 11354.

Supreme Court of Utah.

April 29, 1969.

# 394

Galen Ross, of Mitsunaga & Ross, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., Fred F. Dremann, Asst. Atty. Gen., Salt Lake City, for respondent.

HENRIOD, Justice:

Review of defendant's decision that plaintiff employee was disqualified from receiving benefits under Title 35–4–5(d), Utah Code Annotated 1953.[1] Affirmed with no costs awarded.

Mr. Cruz was employed by Kennecott Copper for 12 years between 1955 and July 15, 1967, and thereafter, as a heavy equipment operator. He was a member of Operating Engineers Local #3. On July 15, 1967, the United Steelworkers went out on strike against Kennecott, and Cruz refused to cross the picket line. Some time in 1966 he had gone to work for Pioneer Sand & Gravel, performing bulldozer work for that company, which work was seasonal as the facts reflect. This work that he performed for the sand company paid about the same hourly rate, but did not have the fringe benefits incident to his employment with Kennecott. It was in addition to that he performed for Kennecott, and was undertaken to pay the expenses of his hospitalized son,—which is most commendable.

On April 20, 1967, less than three months before the strike, he went with the sand company on an eight-hour basis, in addition to his work with Kennecott. He continued on with the sand company after the strike until December 20, 1967, when he was laid off because of inclement weather. He did not quit his job with Kennecott, and he returned to work there after about three months' unemployment after leaving the sand company. From the inception of the strike until final settlement (eight months) he retained his seniority rights and other benefits incident to his employment with Kennecott, he himself paying premiums on his group insurance policy, etc. He had no such rights or obligations, and no such fringe benefits with the sand company. He conceded he would return to Kennecott when and if the strike were settled, which

---

1. "An individual shall be ineligible for benefits * * * (d) For any week in which it is found by the commission that his unemployment is due to a stoppage of work which exists because of a strike involving his grade, class, or group of workers at the factory or establishment at which he *is* or *was* last employed." (Emphasis supplied.) See Lexes v. Indust. Comm., 121 Utah 551, 243 P.2d 964 (1952).

he did. Under the facts of this case there seems to be no question as to an uninterrupted employee-employer relationship[2] during the strike, although there was a work stoppage. It was a sort of forced sick leave without pay, with a shortage of Steelworker-Kennecott contractual balm or medication.

The question arises as to whether an employee out on strike against his employer and who takes a job *after* the strike with another employer, is qualified for benefits if the latter employer lets him go for some reason with which the employee had nothing to do. Generally, paraphrasing the statement in Scott v. U. C. C.[3] in showing qualification for benefits the applicant must 1) show he is not disqualified, 2) that the fact of employment after the strike alone does not sustain such burden, 3) the new employment must be intended to be permanent, with an intention *not* to return to his former employment, 4) must be in good faith and of a type the employee performed theretofore, 5) accomplished and undertaken by complete severance from his former employment.[4]

Applying the guidelines above, we can come to no other conclusion except had Cruz gone with the sand company *after* the strike, such employment would not have made him eligible after being let out by the sand company, under the facts of this case, the guidelines mentioned and the authorities cited. The circumstance of double employment at the time of the strike under the facts and concessions here, should not serve to transmute disqualification into qualification. It takes little imagination to conclude that were we to decide otherwise, dozens or more employees, anticipating a strike, by the simple device of obtaining a second job a week or so before the strike, with a subsequent reduction in force by the second employer, could become eligible for benefits. We do not believe such a conclusion would be compatible with the letter and spirit of the statute.

CALLISTER, TUCKETT and ELLETT, JJ., concur.

CROCKETT, Chief Justice: (Dissenting.)

It is my opinion that the correct view of the situation presented here, and the one

2. Jeffery-De Witt Insulator Co. v. N. L. R. B. (4th Circ. 1937), 91 F.2d 134, 112 A.L.R. 948; Burger v. Unemp. Comp. Bd. of Rev., 168 Pa.Super. 89, 77 A.2d 737 (1951).

3. 141 Mont. 230, 376 P.2d 733, 734 (1962).

4. Mark Hopkins, Inc. v. Calif. Emp. Comm., 24 Cal.2d 744, 151 P.2d 229, 154 A.L.R. 1081 (1944); Oluschak v. Unemp. Comp. Bd., 192 Pa.Super. 255, 159 A.2d 750 (1960). We believe Bruley v. Florida Ind. Comm., 101 So.2d 22 (Fla.App.1958), distinguishable, but assuming not, it would express the minority position.

which is in harmony with the governing statute and its purposes—and which does justice in this case—is to allow workmen's compensation on account of plaintiff's involuntary layoff by Pioneer Sand & Gravel.

First, let it be said that I do not disagree with the cases cited in the main opinion. But it will be noted that they deal with situations where a job is taken while a strike is in progress and there is then a layoff in what may be called the substitute job. The underlying assumption in those cases is that a man has only one job and that, when a strike exists with respect to it, the substitute job is used as an economic weapon in the strike conflict. In such instances it is held that as to the regular employer, the employee-employer relationship continues during the strike and that the worker's unemployment was in fact due to the strike of his group of workers on the job at which he was last employed. But insofar as I have been able to determine, or have been made aware, there are no cases which have ruled upon the question presented here under circumstances similar to the instant case.

The facts in this case as presented to the Commission and to this court are that plaintiff was *also a regular and permanent employee* of Pioneer Sand & Gravel Co., and had been such, long before the Kennecott strike was thought of. Due to the fact that

he had a son who required extraordinary medical expenses he had found it necessary to hold down two regular jobs. Because of this necessity, by dint of his initiative and industriousness, he had in effect created for himself two separate jobs and two separate incomes. It is without dispute that Cruz has been able to take care of both jobs without them interfering with one another.

There is no indication that this other job had any relationship whatsoever to the Kennecott job, nor that it could be regarded as a substitute or "stop-gap" job during or related to the strike. It was simply another full-time permanent job which the plaintiff found it necessary and desirable to hold. Nor can I see any justification for the characterization of plaintiff's employment at Pioneer as a secondary job. The record does not show how Cruz regarded it. The pay on each job was about the same and it is entirely possible that if he had had to choose between them, he may have considered it his No. 1 and not his No. 2 job. But that really makes no difference. So long as the job with Pioneer was regular, permanent, good-faith employment, it should be regarded as such and he should have all of the rights and benefits pertaining thereto.[1]

In order to see the problem here involved in its true and fair perspective, I think it is

---

1. See Bruley v. Florida Industrial Comm., 101 So.2d 22 (Fla.App.).

proper to visualize Mr. Cruz as what he in fact had by his initiative and industry become, a twin man: Cruz No. 1, the employee of Kennecott, and Cruz No. 2, the employee of Pioneer. If Cruz No. 1 became unemployed due to the strike at Kennecott, he would not be eligible for benefits. But when Cruz No. 2, who, I emphasize, had a completely separate, independent and prior existing job at Pioneer, became involuntarily unemployed on that job, as he did, he should be able to receive unemployment compensation and reap the benefits of the credits he had built up on that job, entirely irrespective of the relationship of Cruz No. 1 to Kennecott. The unemployment of Cruz No. 2 at Pioneer was neither as a result of nor did it have any relationship whatsoever to the strike which caused his unemployment at Kennecott. Focusing directly upon the situation relating to his job at Pioneer: that was the job at which he "was last employed," and thus eligible under the statute.[2]

A case somewhat different in its facts, but analogous in its reasoning, is that of Great Lakes Steel Corp. v. Michigan Emp. Sec. Comm.[3] where in the concern was the status of employees who had taken interim employment during a strike and were subsequenty laid off by the interim employers before the strike was settled. It was held, under a statute similar to ours, that the place where the employees are or were last employed was at the interim employers. Compensation was allowed because they became involuntarily unemployed from their "last employment."

The decision in this case deprives the plaintiff of the benefits he should have and penalizes his initiative and industry, rather than rewarding it as should be done. This seems to me particularly inadvisable in these modern times when "gold-bricking" and sponging off the efforts of others is so widespread and ever increasing. It also runs counter to the declared purposes of the Employment Security Act, which are to ease the hardships of unemployment upon individuals and to maintain their purchasing power in the interest of a stable economy.[4] The Act should be liberally construed and applied to effectuate those purposes.[5]

2. Sec. 34–4–5(d), footnote 1 of main opinion.

3. 381 Mich. 249, 161 N.W.2d 14 (1968). Same case before the Michigan Court of Appeals: 6 Mich.App. 656, 150 N.W. 2d 547 (1967).

4. See discussion in Olof Nelson Const. Co., et al. v. Industrial Comm., 121 Utah 525, 243 P.2d 951 (1952); Lexes, et al. v. Industrial Comm., 121 Utah 551, 243 P. 2d 964 (1952).

5. Johnson v. Board of Review of Industrial Comm., 7 Utah 2d 113, 320 P.2d 315 (1958); Northern Oil Co. v. Industrial Comm., 104 Utah 353, 140 P.2d 329 (1943); Singer Sewing Mach. Co. v. Industrial Comm., 104 Utah 175, 134 P.2d 479 (1943), rehearing denied 104 Utah 196, 141 P.2d 694.

Without question, it was through no fault of his own that Mr. Cruz became unemployed when he was laid off by Pioneer. Under this case as decided he derives no benefit from the fact that he had worked sufficient length of time, and that contributions had been made in his behalf, to entitle him to workmen's compensation for his involuntary unemployment from the Pioneer job. These things mean nothing whatsoever because of a strike at the other totally unrelated job, which incidentally, he had nothing to do with because it was not even called by his union. Under such a ruling, a man employed full time at two jobs has to become unemployed through no fault of his own at both of them before he can collect unemployment compensation. On the other hand, through actions of others over whom he has no control, he can become unemployed on both jobs, and be disqualified from receiving any unemployment compensation on either job, being left to starve, or on welfare when he is out of work.

In appraising the fairness and justice of this result, in addition to and consistent with what has been said above, these considerations are important: the plaintiff was undoubtedly in need of the two incomes from his separate jobs or he wouldn't have been working on them; as to each he was equally in need of the income he was deprived of; and by virtue of his involuntary unemployment at Pioneer he was clearly entitled to benefits if Pioneer had been his only employer. The immutable and basic fact is that he was unemployed from the Pioneer job because he was laid off by Pioneer and not because of anything which happened in connection with Kennecott. I further observe that I believe it would be but a small minority of cases which would actually fall in the pattern of this case, and that realistically there should be little fear of someone developing such a situation in order to perpretrate a fraud.

For the reasons above stated I would award plaintiff his unemployment compensation.