[S. F. No. 16853. In Bank. Aug. 18, 1944.]

MARK HOPKINS, INC. (a Corporation) et al., Petitioners, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Respondents; NATALE LELLI et al., Interveners and Respondents.

746

Brobeck, Phleger & Harrison, Gregory A. Harrison and Richard Ernst for Petitioners.

Robert W. Kenny, Attorney General, John J. Dailey, Deputy Attorney General, Forrest M. Hill, Charles P. Scully, Gladstein, Grossman, Margolis & Sawyer, Ben Margolis, William Murrish, Gladstein, Grossman, Sawyer & Edises, Aubrey Grossman and Richard Gladstein for Respondents.

TRAYNOR, J.—In 1937 fifty-five San Francisco hotels entered into collective bargaining agreements with the San Francisco Local Joint Executive Board of the Hotel and Restaurant Employees International Alliance and Bar Tenders League of America. On July 1, 1941, these agreements expired by virtue of a notice given by the Local Joint Board, but were extended until August 30, 1941, pending negotiations for a new contract. Twenty-eight of the hotels were members of the Hotel Employers' Association of San Francisco, which represented them for collective bargaining purposes, and negotiations for an agreement with respect to these hotels were conducted by the association with the union. When no new agreement was reached upon the expiration of the extension of the old agreement, the union established picket lines at four of the hotels, and subsequently took strike action against various other hotels that were members of the association until eighteen of them were struck and their premises picketed.

During this period the union sought to provide the striking employees with other work in hotels unaffected by the strike and in restaurants. The thirty-four claimants involved in this proceeding obtained such employment but for various reasons became unemployed again before the termination of the strike and applied for unemployment insurance benefits. They admittedly left their original work voluntarily because of a trade dispute, but contend that their original disqualification under section 56 (a) of the Unemployment Insurance Act was terminated by their subsequent employment. The adjustment unit of the Division of Unemployment Compensation denied benefits upon the ground that claimants were disqualified by the provisions of section 56 (a), and the referees who heard the appeals affirmed the initial determination. The commission, however, with one member absent and one dissenting, reversed the referees' decisions and awarded benefits, holding in each case that the proximate cause of the claimant's unemployment was the loss of work with his most recent employer and not the continuation of the original trade dispute. It denied the employers' petition that payment of benefits be withheld. The employers thereupon petitioned for a writ of mandamus to compel the commission to vacate its decisions and to refrain from charging the benefits paid to

their accounts. Claimants are interveners in the proceeding. By stipulation the case was submitted on the record of the proceedings before the commission with the reservation of the right to try the question before the court whether the parties should have the right to try the case de novo, but the question as to this right was not argued.

■ Section 56 (a) of the California Unemployment Insurance Act, under which claimants were originally disqualified, provides that "An individual is not eligible for benefits for unemployment, and no such benefit shall be payable to him . . . (a) If he left his work because of a trade dispute and for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed." (Stats. 1939, ch. 7, § 4; Deering's Gen. Laws, 1939 Supp., Act 8780d, § 56 (a).) A claimant is thus ineligible for benefits if the trade dispute is the direct cause of his continuing out of work. If a claimant who leaves his work because of a trade dispute subsequently obtains a permanent full-time job, however, he is no longer out of work and the continuity of his unemployment is broken. If he loses his new job for reasons unrelated to the dispute, he is unemployed by reason, not of the trade dispute, but of the loss of the new employment (see 6 C.C.H. Unemployment Insurance Service 50,515, par. 8111.06 [Wash. App.Trib. Dec. No. A-1324, 3/5/42]; 4 *Ibid.* 33,061, par. 1980.06 [N.J.Bd. of Rev. Dec. No. BR-3094, 9/15/41]). The trade dispute that caused him to leave his original employment is not the cause of his subsequent unemployment, and he would no more be disqualified from receiving benefits for such unemployment than if he had not been previously employed in the struck establishment.

■ The termination of a claimant's disqualification by subsequent employment thus depends on whether it breaks the continuity of the claimant's unemployment and the causal connection between his unemployment and the trade dispute. Such employment must be bona fide and not a device to circumvent the statute. (See 6 C.C.H. Unemployment Insurance Service 50,515, par. 8111.06 [Wash. App.Trib. Dec. No. A-1324, 3/5/42]; 5 *Ibid.* 38,517, par. 8134.15 [Ohio Bd. of Rev. Dec. Dkt. 3898, 183-BR-42, 3/20/42]; 2 *Ibid.* par. 1980.02 [Del. U. CC Dec. Docket No. 139-A, 2/6/42]; 3 *Ibid.* 17070, par. 1980.04 [Ind. App.Trib.]; 4 *Ibid.* 26,049, par. 1963.01

[Minn. App.Trib. Dec. App. No. 1400, 5/18/40].) It must sever completely the relation between the striking employee and his former employer. The strike itself simply suspends the employer-employee relationship but does not terminate it. (*Iron Molders' Union* v. *Allis-Chalmers Co.*, [C.C.A. 7th], 166 F. 45, 52-53 [91 C.C.A. 631, 20 L.R.A.N.S. 315]; *Sandoval* v. *Industrial Commission*, 110 Colo. 108 [130 P.2d 930, 934-935]; see 2 C.C.H. Unemployment Insurance Service par. 1975.053 [Conn.].) Mere temporary or casual work does not sever this relationship, for it does not effectively replace the former employment. The worker expects its termination and does not look forward to that continuity of work and income that characterizes permanent employment. (See 3 C.C.H. Unemployment Insurance Service, 19,047-48, par. 1980.06 [Kan.]; 4 *Ibid.* 33061, par. 1980.06 [N. J. Bd. of Rev. Dec. No. BR-2056, 2/11/41]; 5 *Ibid.* 35,104, par. 1980.06 [N. Y. Ref. Decs. 544-109-4OR, 531-244-4OR, 520-184-4OR, 9/30/40]; 5 *Ibid.* 38,517, par. 8134.15 [Ohio Bd. of Rev. Dec. Dkt. 3898, 183-RB-42, 3/20/42]; 5 *Ibid.* 41,066, par. 1980.025 [Pa. App. No. B-44-1-RN-78, 3/18/41]; 2 *Ibid.* par. 1980.02 [Del. U. C. Com. Dec. Docket No. 139-A, 2/6/42; 6 *Ibid.* 50,045, par. 1980.061 [Wash. App.Trib. Dec. No. A-200, 10/15/40]; 5 *Ibid.* 43058, par. 1980.01 [S. C. Legal No. 85, 10/21/38].) Similarly, part-time employment of a claimant does not break the causal relation between the trade dispute and his unemployment. (See 4 C.C.H. Unemployment Insurance Service 33,061, par. 1980.06 [N. Y. Bd. of Rev. Dec. No. BR-3094, 9/15/41]; 5 *Ibid.* 38,517, par. 8134.15 [Ohio Bd. of Rev. Dec. Dkt. 3898, 183-BR-42, 3/20/42]; 3 *Ibid.* 19,047, par. 1980.06 [Kansas]; 5 *Ibid.* 43,058, par. 1980.01 [S. C. Legal No. 85, 10/21/38].) Only permanent full-time employment can terminate the disqualification. If bona fide, it completely replaces the claimant's former employment, terminating whatever relation existed between the claimant and his former employer. It must be judged prospectively rather than retrospectively, with regard to the character of the employment, how it was obtained, and whether it was in the regular course of the employer's business and the customary occupation of the claimant. (*Cf.* 3 C.C.H. Unemployment Insurance Service 17,070, par. 1980.04 [Ind. Bd. of Rev. Dec. 41-LDR-1, 2/13/41]; 5 *Ibid.* 38,517, par. 8134.15 [Ohio Bd. of

Rev. Dec. Dkt. 3898, 183-BR-42, 3/21/42].) In the absence of special circumstances, employment of a short duration admits of an inference that it was not entered into in good faith with the intent that it be permanent.

In each of the cases in the present proceeding the commission held that under the facts the proximate cause of the claimant's unemployment was the loss of work with his most recent employer and not the continuation of the original trade dispute, and that if the claimant was otherwise eligible, he should be allowed benefits. The commission stated that it took account of such factors as the nature of the subsequent intervening employment and the good faith of the claimant and the employer with reference to it, and that the subsequent intervening employment had to be permanent and steady in nature to terminate the disqualification. These tests were proper, but the record shows that they were not applied by the commission in these cases.

In six cases (Everett Cahill, Com. Case No. 1309; F. Casanova, Com. Case No. 1312; Joe R. Barrios, Com. Case No. 1313; Guido Bichi, Com. Case No. 1329; George A. Mando, Com. Case No. 1330; Alexis Albert, Com. Case No. 1344), after claims for benefits were denied by administrative action, the claimants appealed but failed to appear at the hearings on their appeals. There is no evidence in these cases to support the orders of the commission.

In the cases of Maria Keane McCarthy, Com. Case No. 1302; Natale Lelli, Com. Case No. 1350; and Ethlyn R. Pickell, Com. Case No. 1325, the commission found as a fact that the employment upon which it based the termination of the disqualification was temporary. In the cases of Alois C. Betsch, Com. Case No. 1334, and Margaret Jean Birt, Com. Case No. 1303, the commission found that such employment was part-time, and in the case of Joseph Ferretti, Com. Case No. 1343, that it was temporary and part-time. Employment so characterized by the commission itself is clearly inadequate to sustain an award. These findings are not aided by the commission's statement that such employment was the proximate cause of the subsequent unemployment, for this declaration, which appears at the end of the commission's opinion rather than as part of its findings of fact in all the cases involved in this proceeding, is a conclusion of

law from the facts found and not a finding of fact. A legal conclusion clearly based on findings of probative facts requiring a different conclusion is invalidated by such probative facts. (*Loud* v. *Luse*, 214 Cal. 10, 12 [3 P.2d 542]; *Robinson* v. *Raquet*, 1 Cal.App.2d 533, 541 [36 P.2d 821].)

In the remaining cases the commission could not reasonably conclude that the claimants had obtained permanent full-time employment and had completely severed their relations with their former employers. The undisputed evidence shows that the work secured by the claimants during the hotel strike was stop-gap employment, and that the claimants had not forfeited their employment in the struck establishments. Most of the claimants testified that they intended to return to their former jobs at the end of the strike, and they all performed picket duty during the strike unless excused. The performance of picket duty gives rise to the inference that the employee has a continued interest in his employment at the struck establishment and has not relinquished his job there. Such an inference may be rebutted by evidence that shows clearly that the picketing was not performed because of any interest in retaining employment at the struck establishment and that the claimant has relinquished his position there. Continued membership in the striking union may be necessary to obtain new work in the claimant's customary occupation, and the duty of picketing may be imposed by the union upon all of its members whether on strike, otherwise employed, or employed in nonstruck establishments. Furthermore, one may have no interest in being employed in a struck establishment and yet engage in peaceful picketing to express his sympathy with the cause of those on strike. If, however, a person on strike, who intends to return to his work at the end of the strike, performs picket duty, the conclusion is inescapable that he is a striking employee who is picketing to help make the strike successful so that he may go back to his work with the benefits gained thereby. (See Rest., Torts, § 776, comment b; §§777-812.)

The commission and claimants have demurred to the petition for a writ of mandamus upon the ground that it contains separate causes of action that are not separately stated. All the cases, however, involve common issues of law, and

while the facts of reemployment differed as to each claimant, the facts comprising the background of the controversies are the same and the parties stipulated that the evidence relating thereto presented in one case should apply to all. Moreover, all the cases were consolidated for hearing before the commission, which rendered a uniform opinion for each of them, and no benefit can result from now requiring petitioners to amend their petition to present each claimant's case as a separate cause of action.

The commission and claimants contend further that the employers are not entitled to any relief because they have not exhausted the remedy provided by section 41.1 of the Unemployment Insurance Act. This question is decided adversely to them in *Matson Terminals, Inc.,* v. *California Employment Com., ante,* p. 695 [151 P.2d 202]. Likewise, the fact that the benefits awarded claimants have already been paid cannot deprive petitioners of their remedy in this proceeding. (*Whitcomb Hotel, Inc.,* v. *California Employment Co., post* p. 753 [151 P.2d 233].)

Let a peremptory writ of mandate issue as prayed.

Gibson, C. J., Shenk, J., Curtis, J., and Edmonds, J., concurred.

CARTER, J.—I concur in the conclusion reached in the majority opinion.

In this case both the adjustment unit and the referee denied benefits. Although the commission granted them, there was not present the initial allowance of benefits followed by affirmance by the referee as required by section 67 of the California Unemployment Insurance Act as it read in 1939 (Stats. 1939, ch. 1085), hence, the benefits were not payable regardless of an appeal.

Schauer, J., concurred.

Interveners' petition for a rehearing was denied September 13, 1944. Carter, J., voted for a rehearing.