BERGEN POINT IRON WORKS, A CORPORATION, PROSECU-
TOR-RESPONDENT, v. THE BOARD OF REVIEW OF THE
UNEMPLOYMENT COMPENSATION COMMISSION AND
JOHN P. BONAR, RESPONDENTS-APPELLANTS.

Argued May 20, 1948—Decided September 3, 1948.

For the prosecutor-respondent, *Carpenter, Gilmour &
Dwyer* (*Carl S. Kuebler,* of counsel).

For the respondents-appellants, *Clarence F. McGovern.*

PER CURIAM.

This is an appeal from a judgment of the Supreme Court
reversing a determination by the respondent-appellant, the
Board of Review of the Unemployment Compensation Com-
mission, awarding unemployment compensation to John P.
Bonar.

Bonar was employed by the prosecutor-respondent, Bergen
Point Iron Works, as a watchman. On August 16th, 1946,
a strike was called at the Bergen Point plant and shortly
thereafter Bonar was laid off. He remained unemployed
until February 1st, 1947, when he secured new employ-
ment with the Constable Hook Shipyard. He testified that
when he took his new job he intended it as permanent em-
ployment and did not intend to return ultimately to the Ber-
gen Point plant. He further testified that he continued at
the shipyard as long as he could, but that he was laid off
for lack of work on June 19th, 1947. He was sick between
June 19th, 1947, and July 1st, 1947, but was available for
work thereafter. The strike at the Bergen Point Plant was
still in progress when Bonar's claim for benefits was heard
before the administrative tribunal provided for by the Unem-
ployment Compensation Law. See *R. S.* 43:21–6.

The Board of Review of the Unemployment Compensation
Commission found that Bonar's unemployment between

August 16th, 1946, and February 1st, 1947, was due to a work stoppage resulting from a labor dispute, and that under *R. S.* 43:21–5(d) he was disqualified from receiving benefits during that period. The soundness of this finding is conceded and is not before us for determination. However, the Board made the further ruling that when Bonar took permanent new employment at the shipyard and was subsequently laid off, *R. S.* 43:21–5(d) was no longer applicable, since "his unemployment at that time was due to the layoff by the second employer and not to the stoppage of work at the first plant." Accordingly, the Board determined that Bonar was eligible for benefits from July 1st, 1947. On *certiorari* this determination was reversed by the Supreme Court (136 *N. J. L.* 645, Colie, J., dissenting) which stated that it did not agree that the "subsequent employment, and loss thereof, even though it be taken for granted that it was intended such employment should be permanent, removed the disqualification." This places directly before us the proper construction and application of the language embodied in *R. S.* 43:21–5 (d) that a claimant shall be disqualified for benefits:

"* * * For any week with respect to which it is found that the employment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed."

The beneficient purposes of the Unemployment Compensation Law are well stated in the declaration of public policy in *R. S.* 43:21–2. There the legislature recognized that economic insecurity due to unemployment is a serious menace to the public welfare; that involuntary unemployment is a matter of general concern requiring appropriate legislative action to lighten its burden "which now so often falls with crushing force upon the unemployed worker and his family;" and that in furtherance of the general welfare of its citizens there must be "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment." The law is remedial and should be liberally construed in the light of its stated purposes. See *Henry A. Dreer, Inc.,* v. *Unemployment Com-*

*pensation Commission* (*Supreme Court,* 1941), 127 *N. J. L.* 149, 152.

We are satisfied that a proper construction and application of *R. S.* 43:21-5(d) compels the conclusion that if Bonar accepted his employment at the Constable Hook Shipyard as permanent in nature and without any intent to return ultimately to the Bergen Point Iron Works, his subsequent unemployment was not "due to" the labor dispute at the Bergen Point Iron Works and he was accordingly not disqualified from benefits from July 1st, 1947, when he became available for work. Furthermore, we do not consider it pertinent that work may have been available to him after July 1st at the Bergen Point Iron Works in view of the fact that the strike was then still in progress. Under the terms of *R. S.* 43:21-5(c) (2), such work at a struck plant is not deemed suitable and benefits may not be denied on account thereof to a claimant who is otherwise eligible. The case of *W. T. Grant Co.* v. *Board of Review* (*Supreme Court,* 1943), 129 *N. J. L.* 402, cited in the Supreme Court's opinion, where benefits were denied to an employee who voluntarily left her employment in a store, sought factory employment at higher pay, and declined further employment comparable to her original employment, is not applicable.

The only remaining question is whether Bonar's employment at the Constable Hook Shipyard was, in fact, accepted by him as permanent and without any intent of returning ultimately to the Bergen Point Iron Works. The Board of Review made the express finding that Bonar took such "permanent new employment" at the Constable Hook Shipyard. Although the Supreme Court's legal determination was on the assumption that this finding was correct, its opinion incorporated the Board's findings with the comment that they are "supported by the evidence" and our examination of the record leads us to a like conclusion. Under these circumstances there will be no occasion for further proceedings in the Supreme Court other than its reinstatement of the determination by the Board of Review awarding unemployment compensation to John P. Bonar.

The judgment of the Supreme Court is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, HEHER, WACHENFELD, BURLING, JACOBS, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ.   12.