Romeo ALIN, Plaintiff, v. ALASKA EMPLOYMENT SECUR-
ITY COMMISSION, consisting of Rev. Geo. Boileau, S. J.,
member, Denny G. Breaid, member, Tom Canifax, member,
Truman C. Emberg, member, and W. T. Kegley, member,
Defendants.

No. 3945–KA.

District Court, Alaska. First Division, Ketchikan.

June 6, 1958.

**608**

Floyd O. Davidson, Ketchikan, for plaintiff.

Dickerson Regan, Juneau, for defendants.

KELLY, District Judge.

This matter is before this court upon an appeal from a decision of the Alaska Employment Security Commission (hereinafter "Commission") denying the plaintiff (hereinafter "claimant") unemployment benefits. The facts are as follows:

Prior to August 6, 1957, the claimant was an employee of the Ketchikan Spruce Mills, Inc., (hereinafter "Spruce Mills") and was a member of Local M-193 International Woodworkers of America (hereinafter "Union"). On that date a work stoppage occurred at the plant due to a labor dispute between the plant and the Union local, which labor dispute continued until December 7, 1957. On August 27, 1957, claimant was employed with Ellis Air Lines at Ketchikan, Alaska, (hereinafter "Ellis"), which employment continued until October 15, 1957. On that date the claimant was laid off by Ellis. Claimant claims that on September 18, 1957, he notified the employer personally that he was officially terminating his status as an employee of the Ketchikan Spruce Mills, Inc.

Claimant applied for unemployment benefits on October 23, 1957, but was not allowed any unemployment compensation until December 24, 1957, which was two weeks after the work stoppage, because of the labor dispute, had ceased. Claimant claims that in this action he is entitled to unemployment compensation for the period from October 29, 1957 (six weeks after September 18, 1957), to December 24, 1957. In the record made by the Commission at the hearing, Exhibit B is an employer's report of the claimant's separation dated October 15, 1957, and mailed October 24, 1957, by Ellis, wherein it was stated that the claimant was laid off because "he was hired extra to fill in during vacations' and leaves," and that it was "temporary job— vacation relief." Exhibit D is a statement signed by the claimant dated October 30, 1957, in which he states that "The Spruce Mills was on strike this is the reason I quiete the and fine another job. I am willing to go back to work if the Spruce Mills, will reopen again." (sic) On December 16, 1957, R. L. Anderson, Chief of Benefits, Employment Security Commission, filed a non-monetary determina-

tion holding that the claimant was disqualified from August 6, 1957, to December 7, 1957, by reason of work stoppage due to the labor dispute.

Exhibit G, which is the notice of appeal filed by the claimant, sets forth the following as his reasons:

> "I officially quit my job at the Ketchikan Spruce Mill on 9-18-57, and accepted other employment. In fact, I had gone to work at the Ellis Air Lines on August 27, 1957, and did not terminate from that work until 10-15-57, at which time I was layed off. I believe I should be entitled to benefits after serving a six-weeks disqualification for quitting the job at the Spruce Mill."

Exhibit C, dated October 31, signed by M. Walicki, states that claimant notified the Spruce Mills on September 18th that he was officially quitting as an employee of the Spruce Mill. He contends he expected to be kept on permanently at Ellis, although the facts, including his own testimony, reveal no basis for such expectation.

The appeal referee held a hearing in Ketchikan on January 21, 1958, at 1:30 p. m. at which testimony was taken. At this hearing the claimant testified substantially as follows: That he was employed at the Ketchikan Spruce Mills and that the union to which he belonged went on strike on August 6, 1957; that for the next two weeks he was working with the strike and picket line; then he quit his job at the Spruce Mills around the middle of September; meanwhile he had gone to work for Ellis on August 27th; that at the time he quit his job at the Spruce Mills he was advised that he would lose his seniority rights and insurance benefits; that he ceased working at Ellis because the foreman notified him about a week ahead of time that he was through working down there because the boys came back

from their vacations to take their own jobs which the claimant had taken over.

Edward J. Decker, business agent for Local M-193 International Woodworkers of America, testified that the claimant was a paid-up member of the union and that he had paid his dues six months in advance in August, and was a member in good standing at the time of the hearing.

Mr. Clyde S. Courtnage, comptroller of the Spruce Mills, testified that there was a labor dispute and that the claimant was a picket at the Spruce Mills from the beginning of the dispute until the actual signing of the contract in settlement thereof on December 7, 1957.

Claimant denies he was on picket duty after he went to work for Ellis and his witness Decker likewise testifies to this effect although Decker did state that he talked to claimant quite often "on the sidewalk" and that once in a while claimant would stop in just to see how things were going on and that he still comes in the office once in a while for a conversation. The Court assumes that "on the sidewalk" means where the picket line was operated in front of the Spruce Mills during the entire work stoppage, and it is possible Mr. Courtnage may have seen claimant with the pickets and assumed he was on picket duty although actually he may not have been. However, the fact that he still maintains union membership and the further fact that he still drops into the union office once in a while to see how things are going on, would warrant the Commission, in connection with the other testimony at the hearing, in finding that the claimant did intend to resume work at the Spruce Mills if and when work was there resumed. The plaintiff was recalled for further testimony and stated that he was on picket duty at the beginning of the strike and after that he went to work for Ellis. When asked what kind of an understanding he had when he went down with Ellis

he answered, "They offer me this job. They explain to me they couldn't offer steady job," and that he took some other fellows' places while they were on vacation, and that when he went to work they assured him that they were going to hire him for a couple of months.

On February 5th the Alaska Employment Security Commission at the meeting held in Juneau found as follows:

"After consideration was given to all available information, it was the opinion of the Commission that the last regular employment of the claimant was with the Ketchikan Spruce Mill, that the work with Ellis Airlines was not considered regular permanent employment, and that the intent of the claimant according to his statement was to return to the Ketchikan Spruce Mill. Mr. Breaid made a motion that in accordance with Section 741(i) of the Alaska Act [Sess.Laws 1957, c. 169, § 28] it is determined that the claimant's unemployment was due to a stoppage of work existing because of a labor dispute at the premises of his last regular employment (Ketchikan Spruce Mill), and that claimant be denied benefits from August 6, 1957 to December 7, 1957 at which time the work stoppage caused by the labor dispute was ended. Mr. Kegley seconded the motion; carried unanimously."

The issue to be determined by this Court is whether or not there was substantial evidence in the record to support the conclusion of the Commission. Did the claimant, in good faith and without intention to circumvent the Employment Security Act, remove himself from the employ of the Spruce Mills on August 27, 1957, to such an extent that he was no longer a part of the labor dispute then existing at the Mill? In order to be entitled to unemployment com--

pensation commencing six weeks after his voluntary quit from the Spruce Mills on September 18, 1957, Section 741(b) of the Employment Security Act as amended requires a six-week period of disqualification following a voluntary quit without good cause.

■■ The burden of proof is on the claimant to establish that he is eligible for benefits, and in this instance the burden is upon the claimant to show that the labor dispute was not the cause of his continued unemployment. Where the findings of fact of the Commission are supported by substantial evidence it is conclusive and binding upon this Court and should not be set aside. Even where the facts are in dispute or where reasonable minds may differ as to the inferences and conclusions to be drawn from the evidence, review must be made in the light most favorable to the administrative tribunal.

The questions which were before the Commission for determination were as follows:

(1) Was the claimant's unemployment voluntary?

(2) Was it due to a stoppage of work then existing because of a labor dispute at the immediate factory, establishment or other premises at which he was last employed?

(3) Did the claimant, in good faith and without intention to circumvent the Employment Security Act, remove himself from the employ of the Spruce Mills on August 27, 1957, and terminate at that time his connection with the labor dispute then existing at the Spruce Mills?

(4) Was the "quit" notice or resignation of the claimant on September 18 made in good faith and did it have any effect upon the situation of the claimant with reference to the work stoppage?

Paragraph (c), Chapter 5, Section 809, ESLA 1955, provides:

"(c) The jurisdiction of the reviewing court shall be confined to questions of law, and, in the absence of fraud, the findings of fact of the Commission, if supported by substantial evidence shall be conclusive. * * * "

■ From the record as presented, the Commission had ample grounds to make a determination that the claimant, being out of work because of a work stoppage due to a labor dispute, was employed only temporarily during the course of the work stoppage to fill in for employees of Ellis who were on their vacation; that he retained his union membership and appeared on the picket line and intended to return to work for the Spruce Mills when the work stoppage was over and employment was resumed, and that if it were not for the strike, the claimant would be employed at the striking plant during the period claimed, and that his unemployment was voluntary. The Court finds that the Commission's findings were supported by substantial evidence and are therefore conclusive.

We now come to a consideration of the question of law raised by claimant. He contends that Chapter 5, Section 741(i) of the First Extraordinary Session Laws of 1955, refers merely to the last place where claimant was employed and not to the last regular employment as contended by the Commission; that therefore he is entitled to unemployment benefits for the period from October 29, 1957 (two weeks after his release by Ellis) to December 24, 1957 (when he became eligible for unemployment benefits by reason of the termination, on December 7, 1957, of the work stoppage caused by the labor dispute). In Exhibit G (notice of appeal), however, he claims to be entitled to benefits after serving a six weeks disqualification for quitting his job at the Spruce Mills September 18, 1957. This six weeks would expire October 30, 1957.

Claimant further contends in his brief that his employment by Ellis completely terminated his connection with the Spruce Mills. But he later personally went to the Spruce Mills on September 18, 1957, to inform them of his desire to quit his Spruce Mills job. He also contends that under the Alaska statute Ellis was the establishment where he was last employed and his release there being involuntary, he is entitled to benefits.

Of course, he cannot claim benefits for the same period from both the Ellis and the Spruce Mills jobs. In view of his contention that Ellis is the last employer under the law, this will be first considered.

Where the Act itself, as here, does not define the meaning of the term "last employed" it would seem that the Commission could properly construe it to mean in effect "last *regularly* employed." To do otherwise would open the door to unlimited abuse. It would permit a striker to obtain any sort of temporary work and when it was terminated to apply for benefits for the loss of the temporary job even though the work stoppage still continued.

Both parties discuss the case of Mark Hopkins, Inc., v. California Employment Commission, 1944, 24 Cal.2d 744, 151 P.2d 229, 231, 154 A.L.R. 1081. In that case the California Supreme Court reversed the granting of benefits by the California Employment Commission under somewhat similar facts. In its opinion the court stated:

> "The termination of a claimant's disqualification by subsequent employment thus depends on whether it breaks the continuity of the claimant's unemployment and the causal connection between his unemployment and the trade dispute. Such employment must be bona fide and not a device to circumvent the statute. (citing cases) It must

sever completely the relation between the striking employee and his former employer. The strike itself simply suspends the employer-employee relationship but does not terminate it. (citing cases) Mere temporary or casual work does not sever this relationship for it does not effectively replace the former employment. The worker expects its termination and does not look forward to that continuity of work and income that characterizes permanent employment. (citing cases) Similarly, part-time employment of a claimant does not break the causal relation between the trade dispute and his unemployment. (citing cases) Only permanent full time employment can terminate the disqualification. If bona fide, it completely replaces the claimant's former employment, terminating whatever relation existed between the claimant and his former employer. It must be judged prospectively rather than retrospectively, with regard to the character of the employment, how it was obtained, and whether it was in the regular course of the employer's business and the customary occupation of the claimant. (citing cases) In the absence of special circumstances, employment of a short duration admits of an inference that it was not entered into in good faith with the intent that it be permanent. * * *

"The undisputed evidence shows that the work secured by the claimants during the hotel strike was stop-gap employment, and that the claimants had not forfeited their employment in the struck establishments. * * *"

As the Delaware Unemployment Security Commission stated in Case #7608—Del.R., cited in Commission's brief:

" * * * The position of these claimants is that the Commission is absolutely bound to a literal construction of the words 'last employed,' and that no matter what the length of the new employment was or the intention in the mind of the person obtaining such new employment as to the permanency thereof, the Commission is bound to find the claimant entitled to benefits. Such an interpretation of the act we think is not only contrary to the intention of the legislature, but would lead to the most absurd results. * * * "

In Unemployment Compensation Commission of Territory of Alaska v. Aragon, 329 U.S. 143, 67 S.Ct. 245, 250, 91 L.Ed. 136, the Supreme Court said:

" * * * Here, as in National Labor Relations Board v. Hearst Publications, Inc., 1944, 322 U.S. 111, 131, 64 S.Ct. 851, 860, 861, 88 L.Ed. 1170, the question presented 'is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially.' To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. The 'reviewing court's function is limited'. All that is needed to support the Commission's interpretation is that it has 'warrant in the record' and a 'reasonable basis in law'. National Labor Relations Board v. Hearst Publications, Inc., supra; Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147."

This Court finds that the Commission had before it substantial evidence from which it could find that claimant

was unemployed because of a labor dispute from August 6, 1957, until December 7, 1957; that he accepted casual temporary stop-gap employment to fill in for employees of Ellis who were on vacation; that such temporary employment did not make Ellis the place where "last employed" within the meaning of the Alaska statute.

The determination of the Commission is sustained.