### In re Kenneth E. Hatch

[290 A.2d 180]

No. 65-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 4, 1972

*John A. Dooley, III,* and *Charles Carrington,* Vermont Legal Aid, Inc., Rutland, for Plaintiff.

*James M. Jeffords,* Attorney General and *Raymond S. Fitzpatrick,* Assistant Attorney General, for Employment Security Board.

**Keyser, J.** The appellant (claimant) has appealed to this Court from the decision of the Vermont Employment Security Board (Board), denying his claim for unemployment compensation filed on November 23, 1970.

The case is one of first impression relating to the labor dispute disqualification provision of the Unemployment Compensation Law, 21 V.S.A. § 1344(5).

The appellant, while employed at Jones & Lamson Machine Company (J&L) in Springfield, Vermont, was among the members of his union who struck on June 9, 1970. This caused the plant to close down and a work stoppage followed. In September, 1970, the appellant obtained employment at Craig Machine Company (Craig) in Alstead, New Hampshire, where he resided. Due to a lack of work orders, the claimant's employment at Craig ceased after nine weeks. On November 23, 1970, he filed a claim for unemployment compensation. His claim was denied by the claims examiner, the referee and the Board under 21 V.S.A. § 1344(5) relating to disqualification of benefits. This subsection (5) reads:

"An individual shall be disqualified for benefits . . .

(5) For any week with respect to which the commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises

at which he is or was last employed, provided that this subdivision shall not apply if he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work."

The issues set forth in the agency's certified statement can be summarized as follows: (1) whether the findings of fact are supported by the evidence; (2) whether the findings support the conclusion of the Board that the claimant's unemployment was due to a work stoppage at J&L arising from a labor dispute between his union and the company; (3) whether the findings support the conclusion of the Board that the fact claimant found employment with another employer while the work stoppage was in progress at his last place of employment (J&L) did not terminate his employee status with that company.

The claimant does not challenge any of the findings of fact as not having appropriate evidentiary support. This negates any issue in respect to the findings of fact. Moreover, a careful examination of the appeal record establishes that the findings of the Board are amply supported by evidence adduced at the hearings before the Board and Referee and thus must stand. *Villeneuve* v. *Commr. of Taxes*, 128 Vt. 356, 357, 264 A.2d 774 (1970).

The conclusions of the Board which form the basis of its decision are quoted as follows:

"In this case it is concluded that the claimant's unemployment was due to a stoppage of work which existed because of a labor dispute at the establishment at which he was employed, when as a member of the striking union he was directly interested in the labor dispute that caused the stoppage of work, as he would be a beneficiary of any benefits obtained by the union in any contract negotiated between the union and the employer resulting from the labor dispute. It is further concluded that the fact that claimant found and performed services in employment with another employer while the work stoppage was in progress at his last place of employment did not terminate his employee status with the Jones and Lamson Machine Company, when such employment was temporary and of stop-gap nature, and when at no time was there an un-

equivocal termination of claimant's employment status with the Jones and Lamson Machine Company.

Decision:

The decision of the Chief Appeals Referee is affirmed and claims are denied accordingly."

The appellant claims that the decision of the employment security board is in error for two reasons: (1) that whatever the nature of the petitioner's employment with Craig, it was his last employment for the purpose of his eligibility for Unemployment Compensation benefits and since his termination from that employment was involuntary, he was eligible for benefits, and (2) that petitioner's intervening employment with Craig was permanent and thus severed the employment relationship with J&L so that the petitioner is entitled to benefits.

The appellant's first argument centers around the question of the legislative intent of the words "at which he is or was last employed" used in 21 V.S.A. § 1344(5). The appellant argues that this quoted language can only be construed to mean "last in time." The appellee contends the phrase means "last permanently employed." The Act does not define "last" or "last employed" and its meaning thus becomes the subject of judicial interpretation. And we are by no means confined to a literal interpretation of the statutory language. *Westinghouse Elec. Corp.* v. *Board of Review*, 25 N.J. 221, 135 A.2d 489, 492 (1957).

The interpretation of the wording "at which he is or was *last* employed is stated by M. Shadur in his law review article, *Unemployment Benefits and the "Labor Dispute" Disqualification*, 17 U. Chi. L.Rev. 294, 315 (1950). This phrase is there said to evidence legislative intent to approve the so-called "purge" doctrine, that is, the removal of the "labor dispute" disqualification by taking new employment. Such new employment the Review states, has been thus qualified:

"Decisions have insisted that the new work be taken as *bona fide* permanent employment with no intent to return to the struck employer after the dispute ends, [thus]. . . the labor dispute [has been] abandoned by the employee upon accepting new employment . . . ." *Id.*

Although courts have never announced adherence to the "purge" doctrine by name, its principle has become law in many jurisdictions.

■ Justice Traynor in his opinion for the court in *Mark Hopkins, Inc.* v. *California Employment Comm'n,* 24 Cal. 2d 744, 151 P.2d 229 (1944), set forth the following principles which are applicable here:

> "The termination of a claimant's disqualification by subsequent employment thus depends on whether it breaks the continuity of the claimant's unemployment and the causal connection between his employment and the trade dispute. Such employment must be *bona fide* and not a device to circumvent the statute . . . . It must sever completely the relation between the striking employee and his former employer. The strike itself simply suspends the employer-employee relationship but does not terminate it . . . . Mere temporary or casual work does not sever this relationship for it does not effectively replace the former employment . . . . Only permanent full-time employment can terminate the disqualification. If *bona fide,* it completely replaces the claimant's former employment, terminating whatever relation existed between the claimant and his former employer." 151 P.2d at 231–32.

The New Jersey Court of Appeals and Errors qualified the new employment necessary to "purge" the employee of the labor dispute disqualification in *Bergen Point Iron Works* v. *Board of Review,* 137 N.J.L. 685, 61 A.2d 267 (1948). The identical language of the phrase in question in our statute, namely, "at which he is or was last employed," was embodied in the New Jersey statute. The proper construction and application of the statute was before the court which held, 61 A.2d at 268:

> "We are satisfied that a proper construction and application of [statute cited] compels the conclusion that if Bonar accepted his employment at the Constable Hook Shipyard as permanent in nature and without any intent to return ultimately to the Bergen Point Iron Works, his

subsequent unemployment was not due to the labor dispute at the Bergen Point Iron Works . . . ."

Unemployment compensation was denied in *Gentile* v. *Director of Division of Employment Security,* 329 Mass. 500, 109 N.E.2d 140 (1952). The court stated at 109 N.E.2d at 141:

> "It necessarily follows that such intermittent employment that the claimant had, from time to time during the strike, was merely temporary employment, for in no way did they indicate to the employer or the union that there was any intention on their part to terminate their employment relationship with Reed and Prince (the struck employer). This intermittent work was of a temporary nature and apparently was used as a stop-gap until such time as the strike was settled and the employees could return to work with Reed and Prince . . . . Therefore their unemployment is still due to a stoppage of work which exists because of a labor dispute at the establishment of Reed and Prince."

See also *Bruley* v. *Florida Industrial Comm'n,* 101 So.2d 22 (Fla.App. 1958) ; *Huck* v. *Industrial Commission,* 361 S.W.2d 332 (Mo.App. 1962).

The case with a fact situation that is the most similar to the case at hand is *Oluschak* v. *Unemployment Compensation Board of Review,* 192 Pa. Super. 255, 159 A.2d 750 (1960). In that case as in the one before this Court, an employee became unemployed by reason of a strike at Westinghouse Electric, his place of employment, and had obtained employment with another employer until he was laid off. When asked about his intent to sever his employment at Westinghouse Electric, or resign from his job there, he replied: "I said I would stay if the job was dependable because with the bonus, it would be the same as I was getting and I said if I made out, I would stay there." Considering this evidence, the Pennsylvania Court held at 159 A.2d at 754–55.

> "The board was justified in refusing to accept the claimant's ambiguous statement that 'he would stay if the job was dependable' as evidence of a severance of employment from Westinghouse, especially when by so doing, he

was giving up all the work benefits he had piled up with fifteen years of employment at Westinghouse, and the board was justified in concluding that the claimant had failed to sustain his burden of removing the disqualification."

The Alaska Court directly answered the argument that the word "last" means "last in time". In *Alin* v. *Alaska Employment Security Comm'n*, 17 Alaska 607 (1958), the court said at 17 Alaska at 615:

"Where the Act itself . . . does not define the meaning of the term 'last employed' it would seem that the Commission could properly construe it to mean in effect 'last regularly employed'. To do otherwise would open the door to unlimited abuse. It would permit a striker to obtain any sort of temporary work and when it was terminated to apply for benefits for the loss of the temporary work though the work stoppage still continued."

In examining the preceding cases, it is apparent that certain requirements fall upon the claimant of unemployment compensation benefits who is primarily disqualified for such benefits due to a labor dispute and involuntarily loses subsequent unemployment. These requirements were announced in *Scott* v. *Smith*, 141 Mont. 230, 376 P.2d 733 (1962), where the court at 376 P.2d at 750, in reviewing these and other cases concerning this same issue, found among others the following requirements that must be met by a claimant in order to "purge" himself at the labor dispute disqualification: 1. The burden is upon the claimant to show that he is not disqualified; 2. The taking of other employment by a claimant while on strike, standing alone, is not sufficient to establish that burden; 3. The new employment must not be of the stopgap or part-time or temporary type, but rather of the permanent full time type without intention of returning to the struck employer at the termination of the strike; and 4. There must exist a complete and *bona fide* severance of his employment with the struck employer. In the *Scott* case the lower court overruled the commission and granted benefits to the appellant. The Supreme Court reversed the decision on the

ground that the claimant had not sustained his burden of proof under No. 1, *supra,* and had not proved the requirement of Nos. 3 and 4, *supra.*

The only testimony of the appellant's intent to remain permanently with Craig and not to return to J&L was in response to questioning if he would leave that job and go back to J&L:

> "I don't know. I can't answer that because at Craigs I left for work about 10 minutes to 7 and I was home about 20 minutes of 4 and I went home to dinner and I saved all that travel, and I was awful tempted if I could get a job there to stay there."

This is the type of ambiguous commitment that was held not to "purge" the claimant of the labor dispute disqualification in *Oluschak* v. *Unemployment Compensation Board of Review, supra.* It fails to show an intent to sever his working status with J&L.

In *E. I. DuPont DeNemours & Company* v. *Dale,* 271 A.2d 35 (Del. 1970), the Supreme Court of Delaware rejected the minority view represented by *Great Lakes Steel Corporation* v. *Michigan Employment Security Commission,* 6 Mich.App. 656, 150 N.W.2d 547 (1967), *aff'd,* 381 Mich. 249, 161 N.W.2d 14 (1968), cited by appellant, and, in a comparable factual situation as the case at bar, adopted the majority view as expressed in the cases cited herein which construe the phrase "last employed" to mean "last permanently or regularly employed." The court in *DuPont* said "[o]nly by such construction can the ambiguity created by the underlying policy of the Act be resolved in a way to further the policy of the Act."

Claimant's testimony fails to establish an intent not to return to J&L upon settlement of the strike. He had worked there as a grinder for over twenty-nine years and had belonged to the union since 1946. As a result he had accumulated retirement and pension rights with J&L available to him upon returning to work. When he went to work for Craig there was nothing to indicate that the work was of a permanent nature. The type of work he did at Craig was different and he had to learn new machines. A significant fact is that in

July, 1970, before he went to work for Craig in September, he signed up with his employer, J&L, to have his life insurance kept in force. It was agreed that the cost of the insurance was to be later deducted at the rate of $5.00 a week when he returned to work. And Hatch's labor union continued the Blue Cross-Blue Shield medical coverage in force on his behalf as of July 1, 1970, when the company decided to discontinue its payment.

Appellant's intent not to sever his employment relationship with J&L is indicated by his testimony in response to the following questions of Commissioner Hackel:

> "Mrs. Hackel: Mr. Hatch, did there ever come a time when there was an unequivocal termination of your employment relationship with the Jones & Lamson Company, including the severance of seniority and other accumulated benefit rights?
> Mr. Hatch: As far as I know, no.
> Mrs. Hackel: You never did sever your relationship?
> Mr. Hatch: No.
> Mrs. Hackel: Employment relationship?
> Mr. Hatch: No."

In addition Hatch testified that he was undecided about his future employment with J&L and hadn't made up his mind. But when the strike was settled he was recalled to his job at J&L and returned to work shortly thereafter.

■ Therefore, the mere fact that the appellant was subsequently employed with Craig following his loss of employment with J&L because of a labor dispute, lacking a specific intent to take permanent employment with Craig and lacking also any intent whatsoever to sever his employment relationship with J&L, does not sustain the appellant's burden of proof showing that he, in fact, "purged" himself of the labor dispute disqualification for unemployment compensation benefits.

Claimant argues that "the place where he was last employed" refers to the last place in time and very likely to the last place where he earned $595.00 or more." By 21 V.S.A. § 1325 "[B]enefits paid to an eligible individual shall be charged

against the experience-rating record of his then most recent subject employer from whom he has received $595.00 or more in employment." This statute deals with only what employer's account will be charged with any benefits paid to an eligible individual and is immaterial to the issues raised. Moreover, our holding that the employer-employee relationship between Hatch and J&L was never terminated, makes the contention irrelevant.

[4] The underlying purpose of the Unemployment Compensation Law is to remove the economic disabilities and distress resulting from involuntary unemployment. *Nurmi* v. *Employment Security Board,* 124 Vt. 42, 46, 197 A.2d 483 (1963). And for this reason no person by interpretation of the Act shall be excluded from its benefits unless the Act, itself, in so many words, has demonstrated fairly an intent to make such exclusion. Hatch was clearly within the class of persons which the Legislature intended to disqualify from benefits under § 1344(5). When he took employment at Craig it did not alter his status as a striking employee of J&L, and when his temporary employment at Craig ended his unemployment was due to the election of his union to go out on strike due to a labor dispute with appellant's permanent employer, J&L. To pay him benefits at that time would run counter not only to the various reasons for the adoption of the disqualification clause but also to the statute as well.

The interpretation of the language in question pronounced in the cases cited *supra* is approved and adopted by this Court. Such interpretation is warranted since it does not enlarge the scope of the unemployment compensation statute nor read into the statutes that which the Legislature did not see fit to incorporate. *Nurmi* v. *Employment Security Board, supra,* 124 Vt. at 46. Otherwise, the exclusion from benefits under § 1344(5) which is an expression of deliberate legislative intent would be emasculated.

On the evidence presented the Board, as trier of the fact, found that Hatch's employment was "temporary and of a stop-gap nature." There is legitimate evidence fairly and reasonably tending to sustain it and it must stand. *Barr's Estate* v. *Guay,* 127 Vt. 374, 379, 250 A.2d 512 (1969). The weight of

the evidence, credibility of witnesses and the persuasive effect of their testimony is for the trier of fact, *In re Rathburn,* 128 Vt. 429, 436, 266 A.2d 423 (1970), and this Court cannot substitute its own judgment for that of the lower court on the questions of fact. *Everlasting Memorial Works* v. *Huyck Monument Works,* 128 Vt. 103, 109, 258 A.2d 845 (1969).

Our examination of the record leads us to agree with the conclusions of the Board. Its decision is without error.

*Judgment affirmed. Let the result be certified to the Unemployment Security Board.*