## Stanley G. LaFountain v. Vermont Employment Security Board

[330 A.2d 468]

No. 60-73

Present: Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)

Opinion Filed December 3, 1974

Motion for Reargument Denied January 14, 1975

*Thomas & Alexander*, Burlington, for Plaintiff.

*Raymond S. Fitzpatrick, Esq.*, for Department of Employment Security.

Keyser, J. On July 7, 1972, the claimant found a picket line at his place of employment with Denning Construction Company (Denning) by whom he had been employed for almost a year. This was the result of a labor dispute between claimant's union, Local 522, Laborer's International Union of North America, and Denning. LaFountain refused to cross the picket line and, on August 11, 1972, he filed a claim for unemployment compensation. The Claims Examiner of the Department of Employment Security denied the claim, determining that claimant's unemployment situation came within the labor dispute disqualification provision of the Unemployment Com-

pensation Law, 21 V.S.A. § 1344(5). LaFountain filed an appeal with the Appeals Referee who affirmed the decision of the Claims Examiner. He then appealed to the Vermont Employment Security Board (the Board) which also affirmed the denial of unemployment benefits.

The certified statement of questions of law for review, prepared by the Board pursuant to V.R.A.P. 13(d), requires us to determine whether the findings are supported by the evidence in this case and also whether the findings support the conclusion that 21 V.S.A. § 1344(5) mandates the denial of claimant's unemployment award.

The labor dispute disqualification provision, 21 V.S.A. § 1344(5), with which we are here concerned, reads as follows:

> An individual shall be disqualified for benefits . . . .
> (5) For any week with respect to which the commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the . . . premises at which he is or was last employed, provided that this subdivision shall not apply if he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work. [Now § 1344(4) by 1973 Amendment.]

In *In re Hatch*, 130 Vt. 248, 290 A.2d 180 (1972), we considered the labor dispute disqualification statute for the first time. We there held at p. 254 that the words "last employed" meant "last permanently employed" and set down four requirements that must be met by a claimant seeking to disassociate himself from this disqualification. First, claimant has the burden of proving that he is not disqualified. Secondly, for purposes of meeting this burden, the taking of other employment while on strike, standing alone, is not sufficient. Thirdly, the new employment must not be stop-gap in nature, but must be permanent with no intention of returning to the struck employer. Finally, as a corollary to the third, there must be a bona fide severance of employment with the struck employer.

■  Claimant first contends that, in several critical respects, the evidence before the Board does not support the findings of fact. Findings of fact shall not be set aside unless clearly erroneous. V.R.C.P. 52. Hence, findings must stand under the "clearly erroneous" test if there is legitimate evidence

fairly and reasonably tending to sustain them. *Kissell* v. *Kissell*, 131 Vt. 77, 300 A.2d 551 (1973).

■ Finding No. 1 that the claimant was last employed as a laborer by Denning is nothing less than a conclusion concerning the very issue before the Board under 21 V.S.A. § 1344(5), that is, whether or not Denning, where the stoppage of work occurred, was LaFountain's last place of employment. Yet, the mere fact that a finding is a conclusion of law is harmless when it is sustained by other facts found which are sufficient in law to support the conclusion. *Gramatan Nat. Bank & Trust Co.* v. *Pierce*, 121 Vt. 406, 159 A.2d 781 (1960). If there is support for the Board's conclusion of disqualification, we must find it from the other remaining findings.

■ The record provides substantial evidence to support Finding No. 2 which details the existence of the labor dispute and claimant's refusal to cross the picket line. There likewise can be no dispute with Finding No. 4 which states that claimant never notified Denning that he intended to terminate his employment relationship with him. This is because there was no evidence presented before the Board of any oral or written communication of employment severance. Finding No. 5 that when Denning approached claimant in October with an offer of work, he replied, "I can't go to work.", is also supported by the evidence in the record.

Claimant specifically takes issue with the validity of Finding No. 3:

> Since refusing to cross the picket line on the work site of the Denning Construction Company, claimant has worked on two occasions for Peru Associates for a period of one day each of the two occasions and he has worked three days for Hawthorne Company.

An examination of the record discloses that claimant worked for Peru Associates on three separate occasions after the strike date, twice for periods of one day each as was found, and once for a period of three and a half weeks continuously. He also worked for Hawthorne Company for three days, as was found by the Board, and Martin Fireproofing hired him for a period of a week and a half. Evidence of the longer stint of

work for Peru Associates and the Martin Fireproofing job, not recognized by the Board in their finding, came in unchallenged at the hearing before the Board. We can find no reason why the Board chose not to recognize these longer periods of employment in their finding. We conclude that Finding No. 3, though not clearly erroneous, was certainly incomplete.

Finding No. 7 states that "although claimant stated that he could not return to work for Denning, he admitted that if his union representative referred him to work there that he would go." Although there is some support for the first part of this finding in the record it is important to note that the claimant when testifying on this point limited his decision to return to work for Denning to circumstances where he was unemployed and the welfare of his family was at stake. Finding No. 7 misleadingly did not delineate this limiting language. Moreover, we fail to see the relevance of whether or not he would hypothetically return to work at Denning. What must ultimately be determined under the disqualification statute is whether claimant has severed his employment with the struck employer, not whether when unemployed and his family hungry, claimant would return to Denning.

We are mindful that the Supreme Court must, if possible, construe the findings so as to support the judgment. *Armstrong* v. *Hanover Ins. Co.*, 130 Vt. 182, 289 A.2d 669 (1972). In this light, the weight of the evidence, the credibility of the witnesses, and the persuasive effect of their testimony is for the trier of fact. *In re Hatch, supra,* 130 Vt. at 258. Considering the findings as a whole, there is evidence to support the judgment.

*In re Hatch, supra,* established that other employment, by itself, does not sever the employment relationship with the struck employer and, further, that the claimant has the burden of proving that the new employment is not a stopgap measure while the strike is in progress. While we recognize that, by nature, the construction industry is one characterized by short contract periods and short job duration, on review of the evidence we cannot say the Board erred in determining that LaFountain's subsequent employment was stopgap in nature. Even considering the three weeks with Peru Associates and the Martin job, which were not included by the

Board in Finding No. 3, periods of intervening employment longer in time than presented here have been held to be stopgap for purposes of disqualification (9 weeks). *See also Oluschak* v. *Unemployment Comp. Bd. of Review,* 192 Pa. Super. 255, 159 A.2d 750 (1960), (4.5 months); *Schmolze* v. *Unemployment Comp. Bd. of Review,* 192 Pa. Super. 266, 159 A.2d 755 (1960), (6 months).

The *Hatch* case requires also that claimant show a bona fide severance of employment with the struck employer to avoid disability. The Board's conclusion that Denning was LaFountain's last place of permanent employment is supported by the fact that he in no way conveyed an intention to sever his employment with Denning. Claimant's response to Denning's October offer of work—"I can't go to work"—was evidence from which the Board could infer that the disability was due to the strike and not because claimant was employed elsewhere at that time. Claimant's union membership and his standing to benefit from any strike settlement add further to the evidentiary support for the conclusion that there was no severance with Denning.

We recognize that, on the facts, this appeal is significantly different from the situation presented in *Hatch* where § 1344 (5) was held to bar the unemployment claim. There, claimant had worked for the struck employer for twenty-nine years and, after the strike was settled, he returned to his previous work. He had accumulated retirement and pension benefits during those years, to which he also returned. His temporary work during the strike was of a different nature than his permanent work. Also, during the strike period, he signed up with the struck employer to have his life insurance kept in force. *See In re Hatch, supra,* 130 Vt. at 255–56.

On the other hand, the case at bar is substantially different. There was no extended period of prior association with Denning and he did not return to work there. No retirement benefits could be reclaimed if he returned to work for Denning. And, his post-strike labor was similar to that performed for the struck employer. However, these facts peculiar to the claimant's case were for the Board, as trier of fact, to sift through and use to resolve the employment claim in light of § 1344(5). They determined that he did not "purge" him-

self of the labor dispute disqualification and we cannot, as a matter of law, state that the Board committed error.

◼ Claimant contends, in the event we affirm the determination that Denning was the business at which he was "last employed", that the Board failed to make findings sufficient to support the conclusion that there was a "stoppage of work" within the meaning of § 1344(5). We recognize that where findings of the Board are silent upon a critical issue, this Court cannot supply the missing facts by an examination of the transcript. *Stetson* v. *Davidson,* 119 Vt. 409, 126 A.2d 921 (1956). The claimant points out that the Board made no specific finding that there was a stoppage of work. However, the Board did find that there was a labor dispute between the Union and Denning and that a picket line had been formed at the job site on July 7. We are bound to construe the findings of fact to support the judgment, if they reasonably may be. *Hilliker* v. *Husband,* 132 Vt. 566, 326 A.2d 177 (1974). These findings regarding the labor dispute and the picket line are sufficient to support the conclusion of stoppage of work arrived at by the Board.

◼ Finally, claimant urges that if a "stoppage of work" did exist, then it ceased to exist approximately six weeks after July 7, 1972, at which time claimant's labor dispute disqualification disability also ceased. We have examined the record and nowhere is there any indication that claimant presented to the Board the theory argued here that, if a stoppage of work did exist, then his disqualification ceased six weeks after the strike date when Denning resumed business operation. Points not made or urged in the proceeding below will not be considered for the first time on appeal. *Town of Manchester* v. *Cherbonneau,* 131 Vt. 107, 300 A.2d 548 (1973). At the hearing before the Unemployment Board, claimant relied solely on the theory that Denning was not his last place of employment for purposes of avoiding the statutory disqualification.

We find no error and the judgment must be affirmed for the reasons stated in the opinion.

*Judgment affirmed.*